**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 13, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

KEITH JONES,

       Plaintiff - Appellant/
Cross - Appellee,

    v.

UNITED PARCEL SERVICE, INC.,

       Defendant - Appellee/
Cross - Appellant.

---

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

       Amicus Curiae.

No. 06-3088, 06-3095

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF. KANSAS**
**(D. Ct. No. 05-CV-2034-KHV)**

---

George A. Barton, Law Offices of George A. Barton, P.C., Kansas City, Missouri
(Fredrick D. Deay, II, Law Offices of Fredrick D. Deay, II, Overland Park,
Kansas, with him on the briefs), appearing for Plaintiff-Appellant.

Thomas B. Weaver, Armstrong Teasdale LLP, St. Louis, Missouri (Daniel K.
O'Toole, Armstrong Teasdale LLP, St. Louis, Missouri; Laurence R. Tucker and
Melody L. Nashan, Armstrong Teasdale LLP, Kansas City, Missouri, on the
briefs), appearing for Defendant-Appellee.

Dori K. Bernstein, Attorney (James L. Lee, Deputy General Counsel, Lorraine C.

Davis, Acting Associate General Counsel, and Carolyn L. Wheeler, Assistant General Counsel, with her on the brief), United States Equal Employment Opportunity Commission, Washington, DC, appearing for Amicus Curiae.

---

Before **TACHA**, Chief Circuit Judge, **TYMKOVICH**, and **HOLMES**, Circuit Judges.

---

**TACHA**, Chief Circuit Judge.

---

Plaintiff-Appellant Keith Jones appeals the District Court's grant of summary judgment in favor of Defendant-Appellee United Parcel Service, Inc. ("UPS") on his claims of disability discrimination and retaliation under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq. UPS cross-appeals the District Court's assertion of subject matter jurisdiction over the case, arguing that Mr. Jones failed to exhaust his administrative remedies prior to filing suit. We exercise jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

Until December 2003, Mr. Jones worked at UPS as a package car driver. A package car driver delivers packages to UPS customers along a prescribed route, and one of the essential functions of the job is that the driver be able to lift packages weighing up to 70 pounds overhead. On October 6, 2003, Mr. Jones injured his shoulder at work. He filed a workers' compensation claim related to the injury that same day. Dr. Gary Legler, UPS's company doctor, examined Mr.

Jones and released him to work modified duty on the condition that he limit his lifting to 20 pounds and that he not lift anything above shoulder level. Dr. Legler also referred Mr. Jones to an orthopedic specialist, Dr. Daniel Stechshulte, for further evaluation.[1]

Dr. Stechshulte examined Mr. Jones four times in October and November. During one of the meetings, Dr. Stechshulte recommended that Mr. Jones take a functional capacity exam ("FCE"), which is designed to test the actual ability of an employee to perform a desired job. A physical therapist interpreted the results of the test and concluded that Mr. Jones could not lift 70 pounds from his waist to his shoulder or overhead. Mr. Jones took another FCE on December 4, the results of which were similar to the first FCE. Based on the results of this test, Dr. Stechshulte released Mr. Jones to work with permanent lifting restrictions: his overhead lifting was limited to 20 pounds, and his chest-to-shoulder lifting was limited to 45 pounds. Because of the lifting restrictions, Don Lewick, a labor manager for UPS, told Mr. Jones that he could no longer work as a package car driver. According to Mr. Jones, Mr. Lewick also told him that he could not work in any job at UPS with permanent restrictions, and in response, Mr. Jones said that he "need[ed] to work a job." UPS did not, however, allow him to return to his job as a package car driver or reassign him to another position.

Mr. Jones subsequently contacted his union representative, who suggested

---

[1]In the interim, UPS provided Mr. Jones with temporary alternative work.

that Mr. Jones be examined by another doctor. On February 3, 2004, Dr. Michael Poppa examined Mr. Jones and concluded that, as of that date, Mr. Jones was able to return to work as a package car driver without restrictions. Pursuant to the collective bargaining agreement ("CBA") between UPS and the union, once Mr. Jones was cleared to work by his own doctor, he had to be examined by UPS's company physician, Dr. Legler. Consequently, on February 9, 2004, Dr. Legler examined Mr. Jones. During the examination, Mr. Jones provided Dr. Legler with a copy of his February 3 work release from Dr. Poppa, but did not disclose the results of the FCEs or the fact that Dr. Stechshulte had imposed permanent lifting restrictions in December 2003. Dr. Legler had Mr. Jones perform a lift test, which required Mr. Jones to demonstrate that he could lift 70 pounds. Following the examination, Dr. Legler released Mr. Jones to work without restrictions, sending the work release to Monica Sloan, a district occupational health manager for UPS.

According to Dr. Legler's testimony, later that same day, Ms. Sloan contacted Dr. Legler to inquire about the work release. She asked whether Dr. Legler was aware, when he released Mr. Jones to work, that Dr. Stechshulte had imposed a permanent 20-pound overhead lifting restriction. When Dr. Legler responded that he did not know about Dr. Stechshulte's recommendation, Ms. Sloan asked, "How do you feel about changing the restriction?" Dr. Legler indicated that he would change the restriction, which he did, to reflect the

-4-

permanent 20-pound overhead lifting restriction in accordance with Dr. Stechshulte's recommendation. UPS subsequently continued to refuse to return Mr. Jones to work.

The following day, February 10, 2004, Mr. Jones filed a grievance with the union regarding UPS's refusal to return him to work. The panel that heard the grievance directed UPS and Mr. Jones to follow the CBA's third-doctor procedure. Under the CBA, if UPS's doctor and an employee's doctor disagree, UPS and the union select a third doctor, "whose decision shall be final and binding on the Employer, the Union, and the employee." Following this procedure, the doctor selected, Dr. Frederick Buck, examined Mr. Jones on May 21, 2004. Based on his examination, Dr. Buck thought another FCE would help him better evaluate Mr. Jones's abilities and limitations. Dr. Buck called Ms. Sloan seeking permission to perform another FCE. Ms. Sloan implied that UPS would not pay for an FCE because Mr. Jones already had one the previous December. She also indicated that Dr. Buck's evaluation of Mr. Jones was supposed to be based on prior medical records, rather than a current physical examination of Mr. Jones. Dr. Buck thought this was unusual because generally his opinions are rendered based on both past medical records and a current examination of the patient. According to Dr. Buck, Ms. Sloan told him that the union and UPS had mutually agreed that he was to base his opinion only on Mr. Jones's medical records. Using only Mr. Jones's medical records, Dr. Buck

subsequently opined that Mr. Jones could not perform the essential functions of the package-car-driver position.

On June 1, 2004, Mr. Jones filed a second grievance with the union concerning Dr. Buck's evaluation. After a hearing on the matter, Mr. Jones was instructed to see Dr. Buck again in August 2004. Although Mr. Jones went to see Dr. Buck for an examination, Dr. Buck understood that he was to base his opinion on the medical records as they existed prior to May 2004. In addition, Dr. Buck testified that, even if he had ordered another FCE, the results would not be sufficient to alter Dr. Stechschulte's prior lifting restrictions because, given Dr. Stechschulte's expertise and credentials, his evaluation would supercede Dr. Buck's opinion. Dr. Buck ultimately opined that the essential functions of the package-car-driver position "are beyond the scope of this patient's permanent restrictions." He noted, however, that Mr. Jones "appeared to be strong" and that his opinion was not based on an examination of Mr. Jones's physical condition in either May or August 2004. The union then advised Mr. Jones that the opinion of the third doctor (Dr. Buck) was controlling and would determine his employment status.

In addition to the two grievances he filed with the union, on February 27, 2004, Mr. Jones completed an "Intake Questionnaire" with the Equal Employment Opportunity Commission ("EEOC") alleging that UPS discriminated against him. In filling out the questionnaire, Mr. Jones checked the "no" box in response to the

question: "Do you believe that the employer regarded you as disabled?" He also checked "no" when asked whether he advised his employer that he required an accommodation. In addition, Mr. Jones indicated that he felt UPS discriminated against him when UPS contacted Dr. Legler and Dr. Legler subsequently changed his opinion regarding Mr. Jones's lifting restrictions.

The EEOC responded by letter, indicating that it had not filed a charge of discrimination because the information he provided did not demonstrate that his condition amounts to a disability within the meaning of the ADA. The agency also sought additional information from Mr. Jones. Mr. Jones only partially responded to the EEOC's inquiry, providing additional information in response to one of three questions. The EEOC again advised Mr. Jones by letter that his questionnaire and supplemental materials were not being treated as a charge of discrimination. But on October 27, 2004, the EEOC sent Mr. Jones a dismissal of his charge and notice of his right to sue. The EEOC also sent UPS a copy of the dismissal and notice. This correspondence was the first notice UPS received from the EEOC regarding Mr. Jones's allegations of discrimination.

On January 24, 2005, Mr. Jones filed the instant action in federal district court, alleging disability discrimination (including failure to accommodate) and retaliation in violation of the ADA and wrongful discharge in violation of Kansas law. UPS moved for summary judgment on the grounds that Mr. Jones failed to exhaust his administrative remedies prior to filing suit, and in the alternative, no

genuine issues of material fact exist on any of his disability or retaliation claims.

Mr. Jones also sought partial summary judgment, contending, in part, that he

exhausted his administrative remedies as a matter of law.  The District Court

granted Mr. Jones's motion with respect to exhaustion on all but his theory of

pattern-or-practice discrimination.  The court concluded, however, that UPS was

entitled to summary judgment on the merits of Mr. Jones's ADA claims.  It held,

in relevant part, that Mr. Jones had failed to raise a factual issue with respect to

whether he was "disabled" and that he had failed to establish a prima facie case of

retaliation under the ADA.  Finally, the court denied UPS's motion for summary

judgment on the question of wrongful discharge under Kansas law, but declined to

exercise supplemental jurisdiction over the state-law claim because it had

dismissed all the federal issues.  *See* 28 U.S.C. § 1367(c)(3) (providing that a

district court may decline to exercise supplemental jurisdiction over state-law

claims if it "has dismissed all claims over which it has original jurisdiction").

Both parties appeal the District Court's rulings with the exception of the court's

ruling on supplemental jurisdiction.

## II.  DISCUSSION

We review the District Court's entry of summary judgment de novo.  *Plotke*

*v. White*, 405 F.3d 1092, 1093 (10th Cir. 2005).  Summary judgment is

appropriate "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no

-8-

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing the record, we view the evidence, and draw reasonable inferences therefrom, in the light most favorable to the nonmoving party. *Plotke*, 405 F.3d at 1093–94.

A.      Exhaustion of Administrative Remedies

1.      Filing a charge

Title I of the ADA requires a plaintiff to exhaust her administrative remedies before filing suit. *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005). In the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite to suit. *See id.*; *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005). The first step to exhaustion is the filing of a charge of discrimination with the EEOC. *See Jones v. Runyon*, 91 F.3d 1398, 1399 n.1 (10th Cir. 1996) (noting that, although a *timely* filing is not jurisdictional in nature, the filing itself is a jurisdictional requirement under this Court's precedent). UPS contends that Mr. Jones failed to meet this requirement because, although he filled out an intake questionnaire, he never filed a formal charge of discrimination. The District Court concluded that, even though Mr. Jones only submitted an intake questionnaire, he fulfilled the requirement of filing a charge. We review the court's findings of jurisdictional facts for clear error and its determination of subject matter jurisdiction de novo. *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1104–05 (10th Cir. 2002). As we

explain below, we conclude that Mr. Jones fulfilled the filing requirement because

the questionnaire satisfied the EEOC's minimum requirements for a charge, the

circumstances of the case indicate that Mr. Jones intended to activate the

administrative process, and the EEOC ultimately treated the questionnaire as a

charge.

First, we agree with the District Court that Mr. Jones's questionnaire

satisfied the EEOC's minimum requirements for a charge. Under the relevant

statutory provision, 42 U.S.C. § 2000e-5(b), the EEOC has broad discretion to

determine the content and form of a charge. *See id.* ("Charges shall be in writing

under oath or affirmation and shall contain such information and be in such form

as the [EEOC] requires."). In addition to requiring that a charge be written,

signed, and verified, 29 C.F.R. § 1601.9, EEOC regulations state that a charge

"should contain" particular information, *id.* at § 1601.12(a).[2] But even if a charge

---

[2]A charge "should contain" the following information:
(1) The full name, address and telephone number of the person making the charge . . . ;
(2) The full name and address of the person against whom the charge is made, if known . . . ;
(3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices . . . ;
(4) If known, the approximate number of employees of the respondent employer . . . ; and
(5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.

(continued...)

fails to contain the specified information, it may still be sufficient, provided it is "a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Id.* at § 1601.12(b). Mr. Jones's intake questionnaire clearly satisfies these minimum requirements for the content of a charge, in addition to meeting the EEOC's formal requirements that a charge be written, signed, and verified, *id.* § 1601.9.[3]

Moreover, the record supports the District Court's finding that Mr. Jones intended the questionnaire to serve as a charge. In addition to asking whether a document meets the EEOC's requirements for a charge, other circuits ask whether the charging party manifested an intent to activate the administrative process. *See Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1319–20 (11th Cir. 2001) (holding, in accordance with other circuits, that an intake questionnaire may serve as a charge of discrimination if the circumstances of the case demonstrate that the charging party manifested the intent to activate the administrative process); *see also Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 566–67 (2d Cir. 2006) (ADEA), *cert. granted*, – U.S. – , 127 S. Ct. 2914 (2007); *Whitmore v. O'Connor*

---

[2](...continued)
29 C.F.R. § 1601.12(a).

[3]Mr. Jones verified his questionnaire when he signed it under penalty of perjury. A charge is "verified," as required by 29 C.F.R. § 1601.9, if it is "sworn to or affirmed before a notary public, designated representative of the [EEOC], or other person duly authorized by law to administer oaths and take acknowledgements, or *supported by an unsworn declaration in writing under penalty of perjury*." *Id.* § 1601.3(a) (emphasis added).

-11-

*Mgmt., Inc.*, 156 F.3d 796, 799 (8th Cir. 1998) (Title VII); *Philbin v. Gen. Elec. Capital Auto Lease, Inc.*, 929 F.2d 321, 324–25 (7th Cir. 1991) (per curiam) (Title VII); *Bihler v. Singer Co.*, 710 F.2d 96, 99 (3d Cir. 1983) (ADEA). As the District Court noted, the evidence supports the conclusion that Mr. Jones manifested an intent to activate the administrative process. Mr. Jones testified that he wanted the questionnaire to serve as a charge and that the EEOC told him it would treat it as a charge. The document itself lends credence to Mr. Jones's assertion that he intended the questionnaire to serve as a charge: the questionnaire contains an express statement that, if no other written statements are filed, the EEOC will treat it as a charge. *See Wilkerson*, 270 F.3d at 1320–21 (considering questionnaire's language, which indicated it could serve as a charge, as evidence supporting the charging party's intent to activate the administrative process). Indeed, a senior EEOC investigator testified that the EEOC did, in fact, treat Mr. Jones's questionnaire as a charge and that the EEOC routinely treats such questionnaires as charges. *See id.* (considering EEOC's treatment of questionnaire as a factor in determining whether a charging party manifested intent to activate the administrative process).

UPS contends, however, that the EEOC did not actually treat Mr. Jones's questionnaire as a charge. It notes that the EEOC twice told Mr. Jones that it was not treating the questionnaire as a charge of discrimination and that it never notified UPS that a charge had been filed, which it ordinarily must do within ten

days of the filing of a charge, *see* 29 C.F.R. § 1601.14(a). But the EEOC later sent Mr. Jones a dismissal and notice of his right to sue, which indicates it ultimately treated the questionnaire as a formal charge. *See Wilkerson*, 270 F.3d at 1321 (holding that "the EEOC's ultimate response, combined with . . . other relevant facts, would convince a reasonable person that [plaintiff] manifested her intent to activate the administrative machinery").

Even though the EEOC ultimately treated the questionnaire as a charge, UPS contends that it may not serve as a charge because the purposes of exhaustion have not been fulfilled. As we have previously recognized, the purposes of exhaustion are: "1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim." *Ingels v. Thiokol Corp.*, 42 F.3d 616, 625 (10th Cir. 1994), *abrogated on other grounds*, *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003). Because UPS did not receive notice that a charge of discrimination had been filed against it until it received the notice of dismissal and right to sue, it maintains that the questionnaire is insufficient to constitute a charge of discrimination.

If we were to make notice to the employer a determining factor for exhaustion, the plaintiff would bear the burden of the EEOC's failure in handling a charge. But it is the EEOC's, not the plaintiff's, duty to provide the charged party with notice within ten days after a charge is filed, *see* 29 C.F.R. § 1601.14(a); a plaintiff should not be penalized for the EEOC's negligence in

-13-

handling a charge. *See Wilkerson*, 270 F.3d at 1321 ("[A]ny deficiency in the EEOC's performance of its duties should not adversely affect a plaintiff's right to sue." (alteration in original) (quotation omitted)); *Bihler*, 710 F.2d at 99 n.7 (noting that a rule conditioning a court's jurisdiction on the EEOC's actions in response to a charge "would establish a prerequisite to suit beyond a prospective plaintiff's control and therefore would be contrary to the spirit and purpose of the [ADEA]").

In sum, because Mr. Jones manifested his intent to activate the administrative process by filing a statement satisfying the EEOC's minimum requirements, *see* 29 C.F.R. §§ 1601.9, 1601.12(b), and the EEOC ultimately treated the statement as a charge, we conclude that he has fulfilled the administrative filing requirement.[4]

2.      Scope of the allegations raised in the EEOC charge

The next step in determining whether a plaintiff has exhausted her administrative remedies is to determine the scope of the allegations raised in the

---

[4]The Supreme Court will soon address the question of when an intake questionnaire may serve as a charge of discrimination under the ADEA. The Court recently granted a petition for certiorari on the question of whether an EEOC intake questionnaire may serve as a charge of discrimination, even when the EEOC does not treat the questionnaire as a charge and the employee does not reasonably believe it constitutes a charge. *Holowecki v. Fed. Express Corp.*, 440 F.3d 558 (2d Cir. 2006), *cert. granted*, – U.S. – , 127 S. Ct. 2914 (2007). We note, however, that because the EEOC in *Holowecki* did not issue a right-to-sue letter or otherwise treat the questionnaire as a charge, *id.* at 563, *Holowecki* is notably different from the case before us. In addition, as explained above, Mr. Jones reasonably believed that the questionnaire constituted a charge.

EEOC charge because "[a] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *MacKenzie*, 414 F.3d at 1274; *see also Jones v. Sumser Ret. Vill.*, 209 F.3d 851, 853 (6th Cir. 2000) ("[T]he facts alleged in the charge must be sufficiently related to the claim such that those facts would prompt an investigation of the claim."). We liberally construe charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim. *See MacKenzie*, 414 F.3d at 1274 (construing liberally a plaintiff's charge of discrimination based on the ADA); *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1195 (10th Cir. 2004) (noting that we liberally construe charges based on the ADEA).

We emphasize, however, that our inquiry is limited to the scope of the administrative investigation that can reasonably be expected to follow from the discriminatory *acts* alleged in the administrative charge. In other words, the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim; this follows from the rule that "each discrete incident" of alleged discrimination or retaliation "constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted." *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). Hence, any adverse employment actions occurring after Mr. Jones submitted his administrative charge on February 27,

2004, would not fall within the scope of his charge. But, as we explain below, his charge contains facts concerning allegedly retaliatory and discriminatory acts that occurred before he submitted his charge. Specifically, the charge contains facts underlying his claims that UPS discriminated and retaliated against him by not returning him to work after two doctors released him to return to work in February 2004.

UPS contends, however, that Mr. Jones's charge cannot fairly be read to raise allegations of discrimination on the basis of disability. As support, UPS notes that Mr. Jones checked boxes on page two of the questionnaire indicating he was discriminated against on the basis of his race, color, and age, but he did not check the box for disability. The failure to mark a particular box creates a presumption that the charging party is not asserting claims represented by that box. *See Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1260 (10th Cir. 1998). The presumption may be rebutted, however, if the text of the charge clearly sets forth the basis of the claim. *Id.* UPS asserts that the text of Mr. Jones's charge does not support a disability claim, noting in particular that Mr. Jones did not mention disability in his response to the question: "Why do you feel that the personnel action or other discrimination you have experienced was because of your . . . disability?" Instead, he simply wrote: "Because of the way everything happened."

We disagree with UPS's reading of the charge. Although Mr. Jones did not

check the box on page two indicating disability as a basis for the alleged discrimination, he did check the box for disability on page three in response to the question: "Are you aware of statements made by management officials showing prejudice toward you for any of the following reasons[?]" In addition, the instructions at the bottom of page three directed Mr. Jones to complete Section C of the questionnaire if he believed that he was "not hired because of a disability," and Mr. Jones filled out Section C. Furthermore, in the narrative portion of the form, Mr. Jones described the discriminatory conduct as follows: "Injured on 10/6/03. On 12-4/-3 Dr. Stechschulte placed permanent restriction on me, On 2-3-04 Dr. Michael J. Poppa release[d] me to return to full duty, On 2-9-04 Dr. Legler release[d] me to return to full duty. After UPS contacted Dr. Legler, Dr. Legler changed restriction on 2/9/04." The charge therefore contains allegations that UPS interfered with a medical evaluation in order to ensure Mr. Jones was not released to return to full-duty work. We agree with the District Court that these allegations should have triggered an inquiry into whether UPS viewed Mr. Jones as disabled. In other words, an investigation into whether UPS did not return Mr. Jones to work because it regarded him as disabled "can reasonably be expected to follow the charge." *MacKenzie*, 414 F.3d at 1274. Mr. Jones's claim of disability discrimination is therefore within the scope of the charge.

Likewise, we agree with the District Court's conclusion that Mr. Jones exhausted his retaliation claim before the EEOC. Although Mr. Jones did not

check the box for retaliation on page two of the questionnaire, he did check the box for retaliation as a basis for discrimination on page three of the questionnaire. Furthermore, as noted above, the text of the charge describes the conduct underlying Mr. Jones's claim that UPS did not return him to work because it regarded him as disabled. His retaliation claim is based on these facts as well. He claims that UPS acted with a retaliatory, as well as a discriminatory, motive when it did not permit him to return to work despite releases from two doctors. The facts contained in the charge therefore describe the conduct underlying both his discrimination and his retaliation claims. Thus, given the factual allegations contained in the charge and the fact that Mr. Jones checked a box for retaliation, an administrative investigation of Mr. Jones's retaliation claim "can reasonably be expected to follow the charge of discrimination." *Id.*

We do not agree, however, with the District Court's conclusion that Mr. Jones's failure-to-accommodate claim is within the scope of his administrative charge. Mr. Jones checked "no" in response to the question: "Did you advise your employer that you needed an accommodation?" Moreover, the text of the charge does not contain facts that would prompt an investigation of Mr. Jones's claim that UPS failed to accommodate him. Indeed, facts related to the alleged act of discrimination—UPS's failure to consider accommodating his perceived disability—are absent from the charge. Because an investigation into whether UPS failed to accommodate Mr. Jones cannot "reasonably be expected to follow

-18-

the charge," *id.*, he has failed to exhaust his administrative remedies with respect to this claim.

In addition, we do not agree with the District Court's decision that Mr. Jones's theory of pattern-or-practice discrimination is barred by his failure to raise a pattern-or-practice claim or allege facts supporting such a claim in his administrative charge. Mr. Jones seeks to introduce evidence that UPS routinely applies a "100%-healed" policy, that is, a policy preventing an injured employee from returning to work unless the employee fully recovers from the injury. The District Court assumed that, in offering this evidence, Mr. Jones was asserting a pattern-or-practice *claim*, a particular kind of discrimination claim alleging an employer engaged in systemic discrimination against a protected class. *See Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 359–62 (1977) (discussing method of proof applicable to pattern-or-practice cases brought by the government or a class of plaintiffs). In concluding that Mr. Jones had not exhausted his administrative remedies for a pattern-or-practice claim, the District Court noted that Mr. Jones did not raise the claim or mention the 100%-healed policy in his administrative charge.

If Mr. Jones were in fact raising such a claim, we might agree that he had failed to exhaust his administrative remedies.[5] Pattern-or-practice claims utilize a

---

[5]Because Mr. Jones does not assert a pattern-or-practice claim, we do not decide whether the pattern-or-practice method of proof is available to individual
(continued...)

different method of proof from the method applied to claims of individualized discrimination. *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1106 (10th Cir. 2001) ("[T]he order and allocation of proof, as well as the overall nature of the trial proceedings, in a pattern-or-practice case differ dramatically from a case involving only individual claims of discrimination."). The initial inquiry in a pattern-or-practice case is whether unlawful discrimination is part of the employer's "standard operating procedure," whereas the focus in a case of individualized discrimination is on "the reason(s) for the particular employment decisions at issue." *Id.* at 1105–06. Here, however, we need not decide whether a pattern-or-practice claim is outside the scope of the charge because the record supports Mr. Jones's contention that he seeks to introduce evidence of UPS's allegedly discriminatory policy as proof that UPS was motivated by a discriminatory and retaliatory intent when it refused to return him to work. In other words, he attempts to prove his claim of *individualized* disability discrimination by proving that UPS routinely applies a 100%-healed policy that

[5](...continued)
plaintiffs. We note, however, that other circuits have held that this method of proof is not available in a private, non-class suit. *See Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 575 (6th Cir. 2004) (holding that a pattern-or-practice claim is not available to individual plaintiffs, although "pattern-or-practice evidence may be relevant to proving an otherwise-viable individual claim for disparate treatment under the *McDonnell Douglas* framework"); *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 761 (4th Cir. 1998) ("[T]he [Supreme] Court has noted that there is a 'manifest' and 'crucial' difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination."), *vacated on other grounds*, 527 U.S. 1031 (1999).

discriminates against disabled individuals.

Evidence of such a policy is potentially relevant not only to the allegedly unlawful motivation behind UPS's refusal to return Mr. Jones to work, but also to a determination of whether UPS regarded him as disabled. *See Henderson v. Ardco, Inc.*, 247 F.3d 645, 653 (6th Cir. 2001) (holding that evidence of an employer's 100%-healed policy was relevant to the issue of perceived disability at the summary judgment stage). Although the evidence Mr. Jones asserts as proof of this discriminatory policy is not direct evidence,[6] he may offer circumstantial evidence to prove his claim under the burden-shifting framework commonly used to analyze individual claims of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804–05 (1973) (noting that evidence of an employer's "general policy and practice" may be relevant circumstantial evidence of the

_____

[6]A plaintiff may prove discrimination through either direct or circumstantial evidence. *Ramsey v. City & County of Denver*, 907 F.2d 1004, 1007–08 (10th Cir. 1990). Proof of "an existing policy which itself constitutes discrimination" would constitute direct evidence. *Id.* at 1008. But contrary to Mr. Jones's argument, the record does not contain direct evidence of a discriminatory policy. In order to be "direct," evidence must prove "the existence of a fact in issue without inference or presumption." *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 854 (10th Cir. 2007) (quotation omitted). For example, an employer's express adoption of a discriminatory policy constitutes direct evidence. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) (holding employer's admitted policy discriminatory on its face). To prove the existence of a discriminatory policy, Mr. Jones offers evidence in the form of past litigation concerning this alleged policy and statements of former and current UPS employees. Because this evidence requires a factfinder to infer the current existence of a discriminatory policy and motive, it is circumstantial, not direct, evidence. *See Hall*, 476 F.3d at 854–55.

discriminatory intent behind an individual employment decision); *see also*

*Mendelsohn v. Sprint/United Mgmt. Co.*, 466 F.3d 1223, 1227 n.2 (10th Cir. 2006)

(noting that "we have allowed evidence of a pattern and practice in individual

cases of discrimination as circumstantial evidence of a defendant's discriminatory

animus"), *cert. granted*, – U.S. – , 127 S. Ct. 2937 (2007).

We therefore reverse the District Court's grant of summary judgment in

UPS's favor to the extent it excluded from consideration Mr. Jones's theory of

discrimination based on UPS's allegedly discriminatory policy.  Because Mr.

Jones's claim of disability discrimination is within the scope of the charge, his

specific theory of discrimination—that UPS discriminated against him pursuant to

its own employment policy—is also within the scope of the charge.  We

emphasize, however, that, in holding that this theory is within the scope of the

charge, we express no opinion regarding the admissibility of any particular

evidence.[7]

B.    Discrimination on the Basis of Disability

---

[7]We acknowledge that the Supreme Court recently granted a petition for certiorari in order to decide when testimony by nonparties concerning their treatment by a defendant employer (a form of pattern-or-practice evidence) is admissible in cases of individualized discrimination. *Mendelsohn v. Sprint/United Mgmt. Co.*, 466 F.3d 1223 (10th Cir. 2006), *cert. granted*, – U.S. – , 127 S. Ct. 2937 (2007).  Here, we need not determine whether particular evidence is admissible.  Assuming, without deciding, that Mr. Jones's evidence concerning UPS's alleged pattern or practice of discrimination is admissible, it does not affect our disposition because, as we note below, it does not raise a genuine issue of material fact as to whether UPS regarded Mr. Jones as disabled.

To establish a prima facie case of discrimination under the ADA, Mr. Jones must show: (1) he is "disabled" within the meaning of the ADA; (2) he is qualified, with or without reasonable accommodation, to perform the essential functions of the job he holds or desires; and (3) UPS discriminated against him because of his disability. *See MacKenzie*, 414 F.3d at 1274. The District Court held that Mr. Jones failed to establish the existence of a genuine issue of material fact as to the first element, so it did not address the second and third elements. We agree that Mr. Jones failed to introduce evidence creating a genuine issue of material fact as to whether he is disabled.

The ADA defines "disability . . . with respect to an individual" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). In the present case, Mr. Jones does not argue that he is actually disabled or that he has a record of a disability. Rather, he contends that UPS regarded him as disabled. To prevail on a regarded-as claim, a plaintiff must show that an employer has mistaken beliefs about the plaintiff's abilities: the employer "must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999). Moreover, the employer must mistakenly believe that the impairment substantially limits the

-23-

employee in one or more major life activities. *See id.* (stating that the "regarded as" standard is met when an employer "mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities" or when an employer "mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities").

Mr. Jones contends that UPS discriminated against him based on a mistaken belief that his shoulder injury substantially limits him in the major life activity of working.[8]  *See* 29 C.F.R. § 1630.2(i) (identifying "working" as a major life activity).  He maintains that UPS's belief regarding the extent of his impairment is mistaken because Dr. Poppa and Dr. Legler (at least initially) cleared him to work as a package car driver without any lifting restrictions.  The District Court held that UPS did not regard him as disabled because it relied on doctors' evaluations to determine whether Mr. Jones could return to work.  The court reasoned that, because UPS relied on these evaluations, it did not *mistakenly* perceive Mr. Jones as substantially limited in the major life activity of working.  Although we agree with the District Court's conclusion, we do not entirely agree with its reasoning.

Reasonable reliance on a medical opinion may demonstrate that an

---

[8]Although Mr. Jones makes a passing reference to "lifting" as a major life activity, *see Lusk v. Ryder Integrated Logistics*, 238 F.3d 1237, 1240 (10th Cir. 2001) (identifying "lifting" as a major life activity), he does not argue in his opening brief that he is regarded as substantially limited in that activity. Consequently, we do not address that issue.

employer did not act on the myths, fears, and stereotypes associated with disability that the "regarded as" definition of disability was designed to redress. *See Rakity v. Dillon Cos.*, 302 F.3d 1152, 1162–63 (10th Cir. 2002); *Lusk v. Ryder Integrated Logistics*, 238 F.3d 1237, 1241–42 (10th Cir. 2001); *see also Brunko v. Mercy Hosp.*, 260 F.3d 939, 942 (8th Cir. 2001) (noting that employer's perception was not based on "myths or archaic attitudes about the disabled" because it was based on the treating physician's recommendations regarding the plaintiff's ability to lift). In addition, an employer's disregard for or disinterest in medical judgments regarding an employee's condition may support the opposite inference—that an employment action was impermissibly based on myths or stereotypes associated with disabilities. *See Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1134 (10th Cir. 2003); *McKenzie v. Dovala*, 242 F.3d 967, 971 (10th Cir. 2001); *see also* 29 C.F.R. pt. 1630 app. § 1630.2(*l*) (indicating that an employer regards an employee as disabled if it makes an employment decision "because of a perception of disability based on 'myth, fear or stereotype'").[9]

---

[9]We have previously indicated that an employee *must* show that the employer's mistaken belief was "based on myth, fear, or stereotype" to sustain a regarded-as claim. *Doebele*, 342 F.3d at 1133 (quotation omitted). Conversely, at least one circuit has held that an employer may be liable under the ADA even if its mistaken belief regarding an employee's limitations is not based on myth, fear, or stereotype. *See Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 191 (3d Cir. 1999) ("T]he law in this circuit is that a 'regarded as' plaintiff can make out a case if the employer is innocently wrong about the extent of his or her impairment."). In any event, as we explain below, the basis for UPS's belief is not determinative here because Mr. Jones has failed to show that UPS mistakenly

(continued...)

In the case before us, the record contains evidence that UPS not only deliberately ignored medical evidence related to Mr. Jones's current ability to perform the essential functions of his position, but also actively interfered with the process by which he was evaluated. But although this evidence undercuts the District Court's conclusion that UPS's perception was based on medical judgment (and therefore not mistaken), a genuine issue of material fact concerning the basis for UPS's perception of Mr. Jones's abilities is not enough to survive summary judgment. Even if UPS mistakenly believed that Mr. Jones could not perform the essential functions of his particular job, it did not regard him as disabled unless it also mistakenly believed that his impairment substantially limited him in a major life activity (in this case, the major life activity of working). *See Sutton*, 527 U.S. at 489; *see also Doebele*, 342 F.3d at 1133 (noting that an employee must show *both* that the employer regarded her as substantially limited in the major life activity of working and that the mistaken belief regarding her limitations was based on myth, fear, or stereotype). Unless UPS mistakenly believed Mr. Jones was substantially limited in a major life activity, it was free to decide that his lifting restrictions (real or perceived) prevented him from returning to his job as a package car driver. *See Sutton*, 527 U.S. at 490–91 ("[A]n employer . . . is free to decide that some limiting, but not *substantially* limiting, impairments make

[9](...continued)
believed (innocently or not) that he was substantially limited in a major life activity.

-26-

individuals less than ideally suited for a job.").

Consequently, we will not reverse the District Court's grant of summary judgment unless the record contains evidence that UPS viewed Mr. Jones as substantially limited in the major life activity of working. According to the EEOC regulations, in the context of the major life activity of working, the "term substantially limits means significantly restricted in the ability to perform either a *class of jobs* or a *broad range of jobs in various classes* as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i) (emphasis added); *see also Sutton*, 527 U.S. at 492 ("If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs."). Mr. Jones must therefore present evidence that UPS mistakenly believed his shoulder injury significantly restricted his "ability to perform either a class of jobs or a broad range of jobs as compared to similarly trained persons." *EEOC v. Heartway Corp.*, 466 F.3d 1156, 1162 (10th Cir. 2006) (quotation omitted).

As we have previously explained, the determination of whether an employee is regarded as disabled in the major life activity of working has a "strong subjective component." *Id.* at 1163. To show UPS regarded him as substantially limited in the major life activity of working, Mr. Jones must

therefore show that UPS "*subjectively* believed [him] to be significantly restricted as to a class of jobs or broad range of jobs in various classes." *Id.* The determination of what constitutes a class or broad range of jobs requires, however, an objective inquiry. *Id.* Thus, we first determine whether UPS subjectively believed Mr. Jones to be substantially limited in his ability to perform other jobs (in addition to his job as a package car driver). *See id.* at 1166. If UPS treated Mr. Jones as significantly restricted in jobs other than the one he held at UPS, we then determine whether the jobs from which Mr. Jones was regarded as restricted constitute a "class of jobs" or a "broad range of jobs." *Id.* at 1166–67. A class of jobs includes "'the number and types of jobs utilizing similar training, knowledge, skills or abilities, within [the employee's] geographical area,'" *id.* at 1164 (quoting 29 C.F.R. § 1630.2(j)(3)(ii)(B)), whereas a broad range of jobs includes "'the number and types of other jobs not utilizing similar training, knowledge, skills or abilities within that geographical area,'" *id.* (quoting 29 C.F.R. § 1630.2(j)(3)(ii)(C)).

As evidence that UPS regarded him as substantially restricted in a class or broad range of jobs, Mr. Jones emphasizes that UPS did not consider him for any other position at the James Street facility where he worked or another nearby facility. In other words, he argues that UPS's failure to offer him reassignment within the company is evidence of its subjective belief that he is substantially limited in performing other jobs. We find this argument unavailing for a number

-28-

of reasons.

First, we note that Mr. Jones does not argue that UPS viewed him as substantially limited in his ability to perform a *class* of jobs because UPS believed he could not perform other jobs with similar lifting requirements (e.g., jobs loading and unloading trucks). Instead, he argues that, because UPS is a large company with numerous job openings for a variety of positions, its failure to offer him a position without similar lifting requirements is evidence that UPS viewed him as unable to perform a *broad range* of jobs. To reach this conclusion, he argues that the objective determination of what constitutes a "broad range of jobs" depends on the range of jobs offered by UPS, rather than the range of jobs available to him within his geographical area. But, as noted above, we look at the range of jobs within the geographical area. *See Sutton*, 527 U.S. at 492 (noting that, when determining whether an individual is substantially limited in the major life activity of working, courts should consider, among other things, "the geographical area to which the individual has reasonable access"). We acknowledge, of course, that, when an employer is hiring for a broad range of jobs in the relevant geographical area, its decision not to offer an employee one of a broad range of company jobs *may* be relevant evidence of its perception of that employee's abilities. *See Doebele*, 342 F.3d at 1134 (considering employer's failure to offer plaintiff a job, when it was hiring 200–300 people each week, as evidence employer regarded plaintiff as disabled).

Here, however, the record demonstrates that UPS believed Mr. Jones was ineligible for jobs without similar lifting requirements under the collective bargaining agreement.[10]  Thus, even if UPS had open positions without similar lifting requirements, it could not consider Mr. Jones for these positions without disregarding its understanding of the collective bargaining agreement.[11]  *See EEOC v. Schneider Nat'l, Inc.*, 481 F.3d 507, 512 (7th Cir. 2007) (reasoning that employer did not regard plaintiff as disabled when all available truck-driving jobs at company were subject to safety standard that plaintiff could not meet). Moreover, because UPS did not believe he was eligible for other jobs, Mr. Jones's allegations that UPS applied a 100%-healed policy are of no consequence; even if UPS applied such a policy in refusing to return Mr. Jones to work, it did not use the policy to exclude him from a *broad range* of company jobs.  *See Henderson*, 247 F.3d at 653 ("Where the 100% rule is applied to mildly impaired persons to exclude them from a broad class of jobs, it may be treating them as disabled even if they are not . . . ."); *see also id.* at 653 n.6 (explaining that the "variability and

___

[10]Mr. Jones does not dispute that this was UPS's understanding of the collective bargaining agreement.  Because UPS's *understanding* of the agreement is the relevant factual issue, we express no opinion as to whether UPS's understanding is a correct interpretation of the agreement as a matter of law.

[11]In this respect, the present case is unlike *Doebele*, 342 F.3d 1117, where we noted that the employer's failure to consider the plaintiff for one of many open positions with the company was evidence supporting the inference that it viewed the plaintiff as substantially limited in her ability to perform a broad range of jobs.  *See id.* at 1134  (noting that the employer "was hiring 200–300 people a week at the time").

type of jobs available" are relevant in determining whether an employer applying a 100%-healed policy regards an employee as disabled).

Furthermore, Mr. Jones offers no evidence that UPS did not consider him for particular jobs because it viewed him as substantially restricted in his ability to do these other jobs. *Cf. Heartway Corp.*, 466 F.3d at 1166 (noting that a jury could infer from the evidence that employer believed the plaintiff was restricted in ability to do "any kitchen job" and "any other job where there is a chance of bleeding and thereby transmitting hepatitis"); *McKenzie*, 242 F.3d at 971–72 (noting employer's statements, including statement that plaintiff "'would be better off in some other field,'" were evidence that plaintiff was regarded as disabled in class of jobs). For example, he has not presented any evidence indicating that UPS would refuse to consider him for another job if it had an opening for a job he could perform with his lifting restrictions without violating the terms of the collective bargaining agreement. *See Schneider Nat'l, Inc.*, 481 F.3d at 512 (reasoning that "given the absence of [job] openings, a mistaken belief that [plaintiff] was disqualified from all driving jobs cannot be inferred from the fact that the company didn't offer him a driving job"). In short, because Mr. Jones has not identified a broad range of jobs that UPS mistakenly believed he was substantially limited in performing, his regarded-as claim may not survive summary judgment.

C.    Retaliation

To establish a prima facie case of retaliation under the ADA, Mr. Jones must show: "'(1) that he engaged in protected [activity] . . . , (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.'" *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006) (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1198 (10th Cir. 2006)).

Before the District Court, Mr. Jones argued that he engaged in protected activity by filing grievances with the union and by repeatedly requesting that UPS return him to work.[12]  The District Court held that Mr. Jones's union grievances were not protected activity because they did not contain allegations of discrimination and that, even if the grievances constituted protected activity, he had failed to establish a causal link between the grievances and UPS's refusal to return him to work.

On appeal, Mr. Jones does not argue that the District Court erred in holding that his grievances were not protected activity.  Instead, he argues that his requests to return to work are protected activity because they were actually requests for an accommodation (namely, reassignment to a different position).

---

[12]Mr. Jones does not contend that UPS retaliated against him for filing a charge with the EEOC.  Although Mr. Jones filed his intake questionnaire with the EEOC in February 2004, UPS had no knowledge of his allegations until October 2004, well after the allegedly discriminatory conduct occurred.

Although Mr. Jones claims he made multiple requests to return to work, he describes only one of these requests in any detail. When a UPS labor manager told him to go home after learning that Dr. Stechshulte had imposed permanent lifting restrictions, Mr. Jones responded: "I can't just go home. I need to work a job." Mr. Jones argues that this response was a request to be reassigned to another job, which triggered UPS's duty to engage in the interactive process for determining whether he is entitled to a reasonable accommodation under the ADA. *See Davoll v. Webb*, 194 F.3d 1116, 1132 n.8 (10th Cir. 1999) (noting that, once an employee notifies an employer of a disability and requests reassignment, both parties should "interact in good faith to determine how to reasonably accommodate the employee").

We begin by recognizing that a request for reassignment may constitute protected activity under the ADA. We have treated requests for reasonable accommodation as protected activity under the ADA. *See Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1265 (10th Cir. 2001); *Butler v. City of Prairie Vill.*, 172 F.3d 736, 752 (10th Cir. 1999). And a request for reassignment to a vacant position is a request for a reasonable accommodation.[13] 42 U.S.C. § 12111

---

[13]To communicate a desire for reassignment, an employee "need not use magic words," but "must convey to the employer a desire to remain with the company despite his or her disability and limitations." *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1172 (10th Cir. 1999) (en banc); *see also Davoll*, 194 F.3d at 1133 ("[T]he burden is typically on the employee to initiate the interactive process.").

(9)(B); *see also Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1167 (10th Cir. 1999) (en banc) (holding that employers must, when appropriate, accommodate a disabled employee by reassignment to a vacant position if employee cannot be accommodated in existing job). Hence, if Mr. Jones had a reasonable, good faith belief that he was entitled to an accommodation, a request for reassignment to another position would constitute protected activity. *See Selenke*, 248 F.3d at 1264 ("[I]n order to prosecute an ADA retaliation claim, plaintiff need not show that she suffers from an actual disability. Instead, a reasonable, good faith belief that the statute has been violated suffices."). To show he engaged in protected activity, Mr. Jones must therefore show that he reasonably believed he was entitled to an accommodation under the ADA. *Id.*; *see also Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328–29 (11th Cir. 1998) (holding that employee's requests for accommodation were not protected activity because the evidence did not show that he had a reasonable, good faith belief that he was disabled or perceived as disabled).

We need not determine, however, whether Mr. Jones reasonably believed that he was entitled to an accommodation because the record contains no evidence that UPS was aware of any such belief. Without knowledge of Mr. Jones's belief that he is entitled to an accommodation for a perceived disability, UPS could not interpret his requests to return to work as requests for an accommodation. *See Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188–89 (10th Cir. 2002)

(explaining that employer must know of employee's protected activity in order to engage in unlawful retaliation). Unless an employer knows that an employee is engaging in protected activity, it cannot retaliate against that employee *because* of the protected conduct, as required by statute. *See* 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual *because* such individual has opposed any act or practice made unlawful by this chapter or *because* such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." (emphasis added)); *Petersen*, 301 F.3d at 1188 ("An employer's action against an employee cannot be *because* of that employee's protected opposition unless the employer knows the employee has engaged in protected opposition.").

In other words, Mr. Jones cannot establish a causal link between his allegedly protected activity and UPS's refusal to return him to work unless he can show that UPS knew he was engaging in protected activity. *See Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993) (holding that "to establish a 'causal connection,' plaintiff must show that the individual who took adverse action against him knew of the employee's protected activity"). To establish causation, Mr. Jones must therefore present evidence showing that his supervisors knew of his belief that he was entitled to a reasonable accommodation under the ADA based on a perceived disability. *Cf. Petersen*, 301 F.3d at 1188 (reasoning that employee's supervisors could not know that employee was engaging in protected

conduct "unless they knew that her opposition was based (at least in part)" on supervisor's discriminatory motives).

Mr. Jones does not explain how his supervisors could have known that he believed he was regarded as disabled and entitled to an accommodation. As evidence that he requested reassignment, he offers only his remarks in response to UPS's labor manager ("I can't just go home. I need to work a job."). In the absence of other evidence, these remarks could not have put UPS on notice that Mr. Jones was requesting reassignment based, at least in part, on his belief that UPS regarded him as disabled. Because Mr. Jones has failed to produce any evidence that UPS knew he was engaging in protected activity, he has failed to establish the requisite causal connection between this activity and any adverse employment actions. We therefore affirm the District Court's grant of summary judgment in UPS's favor on Mr. Jones's retaliation claim.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the District Court's decision that Mr. Jones exhausted his administrative remedies with respect to his claims that UPS discriminated and retaliated against him in violation of the ADA when it refused to return him to work. We REVERSE the court's decision that Mr. Jones's failure-to-accommodate claim is within the scope of his administrative charge, as well as its decision excluding Mr. Jones's theory of pattern-or-practice discrimination as outside the scope of his administrative charge. In addition, we

-36-

AFFIRM the District Court's entry of summary judgment in favor of UPS on the merits of Mr. Jones's ADA claims.