FILED
United States Court of Appeals
Tenth Circuit

October 22, 2009

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

FELIX LARA,

   Plaintiff - Appellant,

v.

UNIFIED SCHOOL DISTRICT #501,
Shawnee County, State of Kansas,

   Defendant - Appellee.

No. 08-3320
(D.C. No. 5:06-CV-04145-RDR)
(D. Kan.)

ORDER AND JUDGMENT[*]

Before **LUCERO**, **BALDOCK**, and **MURPHY**, Circuit Judges.


   Felix Lara appeals the district court's rulings in favor of his former

employer, Unified School District #501 ("USD"). The district court dismissed his

state workers' compensation claim and one of his claims under the Americans

with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. It then granted

---

   [*]After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

summary judgment in favor of USD on Lara's claims under the ADA, Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et seq., and Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I

USD employed Lara as a custodian/building operator from 1982 until his retirement in July 2005, when Lara was 60 years old. Lara suffered ill health in the final years of his employment. In July 2002, he was diagnosed with a ruptured aneurysm and took three months of FMLA leave. In March 2004, he suffered a heart attack and underwent bypass surgery, forcing him to use twelve weeks of FMLA leave, plus three weeks of unpaid leave. On September 8, 2004, Lara suffered an abdominal hernia at work. He consequently missed three weeks of work before returning subject to a lifting restriction. He missed two additional months, from late October to late December, due to a related hernia operation. Lara used workers' compensation leave for the hernia-related absences.

On September 24, 2004, Lara sent a letter to USD giving notice of his intent to retire in August 2005. He submitted his formal retirement request in January 2005 and retired in July of that year.

In September 2005, Lara filed age and disability discrimination charges against USD with the Kansas Human Rights Commission ("KHRC") and the United States Equal Employment Opportunity Commission ("EEOC"). The

2

KHRC concluded that Lara's charges had not been timely filed; the EEOC issued a right-to-sue letter. On December 28, 2006, Lara faxed USD a notice of claim, as required by Kan. Stat. Ann. § 12-105b to bring suit against a municipal entity. The next day, Lara filed the present action in the United States District Court for the District of Kansas.

The district court dismissed three of Lara's claims for lack of subject matter jurisdiction. It dismissed Lara's ADA failure-to-accommodate claim for failure to exhaust state remedies. The court also ruled that it lacked subject matter jurisdiction to hear Lara's state workers' compensation claim because he failed to provide timely notice in accordance with Kan. Stat. Ann. § 12-105b(d). Finally, it dismissed Lara's FMLA interference claim because Lara did not allege any facts suggesting that USD interfered with his taking or completing FMLA leave. In a separate order, the district court granted summary judgment in favor of USD on Lara's remaining claims. It found that Lara failed to present evidence that he was subject to an adverse employment action.

## II

### A

Lara appeals the district court's grant of summary judgment to USD on his ADEA, ADA, and FMLA-retaliation claims, challenging the district court's determination that he failed to present evidence of an adverse employment action. Summary judgment is appropriate "if the pleadings, the discovery and disclosure

3

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We review the district court's grant of summary judgment de novo, and we consider the evidence in the light most favorable to Lara, the non-moving party. Jones v. U.P.S., Inc., 502 F.3d 1176, 1183 (10th Cir. 2007).

Because Lara presents circumstantial rather than direct evidence of discrimination and retaliation, we analyze these claims under the burden-shifting framework described in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See Hinds v. Sprint/United Mgmt. Co., 523 F.3d 1187, 1195 (10th Cir. 2008) (ADEA); Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1170 (10th Cir. 2006) (FMLA retaliation); Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (ADA). Under this framework, Lara must first establish a prima facie case of discrimination or retaliation, including an adverse employment action. See Hinds, 523 F.3d at 1195 ; Metzler, 464 F.3d at 1171; Morgan, 108 F.3d at 1323.

Lara was not terminated by USD, but retired. When a plaintiff resigns, he may establish the adverse action element by showing that he was constructively discharged. Fischer v. Forestwood Co., Inc., 525 F.3d 972, 980 (10th Cir. 2008). Lara argues the district court erred in analyzing his claim under the constructive discharge framework, asserting he was actually discharged. However, his factual allegations on this point consist entirely of assertions of undesirable treatment at

4

work.  "An actual discharge does not occur . . . when the employee chooses to resign rather than work under undesirable conditions."  Id.  Thus, the district court correctly characterized Lara's claims as alleging constructive discharge, not actual termination.  See id.

An employee is constructively discharged "when an employer deliberately makes or allows the employee's working conditions to become so intolerable that the employee has no other choice but to quit."  MacKenzie v. City & County of Denver, 414 F.3d 1266, 1281 (10th Cir. 2005).  "We evaluate the voluntariness of an employee's resignation under an objective, totality of the circumstances standard."  Id.  We have noted that the constructive discharge "bar is quite high."  Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1221 (10th Cir. 2002).  "The question is not whether working conditions . . . were difficult or unpleasant."  Exum v. U.S. Olympic Comm., 389 F.3d 1130, 1135 (10th Cir. 2004) (quotation omitted).  Instead, "a plaintiff must show he had no other choice but to quit."  Garrett, 305 F.3d at 1221.

In support of his constructive discharge theory, Lara cites to his deposition testimony that Bill Bagshaw, the principal of USD, stated that Lara was having a streak of bad luck with his health and that he hoped it would not continue.  Lara further averred that USD's human resource director, Jill Lincoln, told him he was "too old" and was "getting on in age."  According to Lara, Lincoln "brought up the idea that [he] maybe should take an earlier retirement" because he was

5

missing too much work, having too many medical problems, and costing the school district money. Lincoln then told Lara that if he did not opt for retirement, she would transfer him to a district service center. Lara admitted that he did not know what duties he would be assigned at this service center and gave inconsistent testimony as to whether he believed the transfer would affect his pay.

Lara testified that immediately after his meeting with Lincoln, Bagshaw called him into his office and told him he was costing the school district "quite a bit of money," that he already had health problems, and that he should "retire and enjoy the good life." Lara replied that he did not want to retire until he was sixty-one years old and left the office. Lara conceded that Bagshaw never threatened him but only suggested retirement.[1] Lara also testified that Bagshaw's supervisor, Jeff Litfin, once commented that he was getting close to retirement and asked him if he was retiring soon, but admitted that Litfin was only curious and made no threats.

Lara does not allege that any school official made retirement-related comments to him after September 2004. Although Lara told Lincoln he was upset and did not want to retire when he turned in his formal retirement request in January 2005, this is evidence only of his remark.

---

[1]Lara now asserts Bagshaw became angry when Lara told him he was not going to retire. At his deposition, however, Lara testified that Bagshaw never lost his temper and merely "shook his head" when informed about Lara's retirement plans.

We agree with the district court's conclusion that Lara's evidence does not demonstrate that he was constructively discharged. There is no evidence that Lara's working conditions were intolerable or that he had no choice but to retire. Bagshaw and Litfin made only isolated remarks about Lara's retirement plans, none of which where threatening or harassing. Although Lara alleges that Bagshaw and Lincoln made age-related comments, these comments were also isolated. Moreover, a "finding of constructive discharge may not be based solely on a discriminatory act; there must also be aggravating factors that make staying on the job intolerable." Bennett v. Quark, Inc., 258 F.3d 1220, 1229 (10th Cir. 2001), overruled on other grounds by Boyer v. Cordant Techns., Inc., 316 F.3d 1137 (10th Cir. 2003). Lara has not alleged any aggravating factor.

Lincoln's alleged comments about Lara's health and early retirement options were similarly isolated and cannot reasonably be characterized as harassing or intolerable. Although Lara alleges that Lincoln threatened to transfer him to a service center if he chose not to take early retirement, he presented no evidence that the transfer would have had any materially adverse consequences on his working conditions. Without significant adverse changes to working conditions, a lateral transfer is not an adverse employment action. See Sanchez v. Denver Pub. Sch., 164 F.3d 527, 532 (10th Cir. 1998).

We therefore affirm the district court's grant of summary judgment in favor of USD on Lara's ADEA, ADA and FMLA claims.

**B**

Lara also contends the district court erred in dismissing his state workers'
compensation claim.  We review an order dismissing a complaint under
Rule 12(b)(1) de novo.  Ordinance 59 Ass'n v. U.S. Dept of Interior Sec'y,
163 F.3d 1150, 1152 (10th Cir. 1998).

Kan. Stat. Ann. § 12-105b requires that a plaintiff file a notice of claim
before commencing an action against a municipality.  It further provides that
"[o]nce notice of the claim is filed, no action shall be commenced until after the
claimant has received notice from the municipality that it has denied the claim or
until after 120 days has passed following the filing of the notice of claim,
whichever occurs first."  Id.

Lara filed his complaint only one day after giving USD the notice of his
claim.  Lara argues that § 12-105b does not dictate when a plaintiff must file a
law suit, that USD failed to advance a definition of the phrase "no action shall be
commenced," and that he did not "commence" the action until he effected service.
These arguments are without merit.  One commences an action by filing a civil
complaint with the court clerk.  See Fed. R. Civ. P. 3; see also Kan. Stat. Ann.
§ 60-203.  It is undisputed that Lara commenced his action before USD denied the
claim or the 120-day waiting period expired.  Thus, it is undisputed that Lara did
not comply with the requirements of § 12-105b(d).  It is also well-established that
compliance with the requirements of § 12-105b is mandatory under Kansas law.

8

Myers v. Bd. of County Comm'rs of Jackson County, 127 P.3d 319, 325 (Kan. 2006). For the reasons stated by the district court, we affirm the dismissal of Lara's state workers' compensation claim.

## C

Finally, Lara contends the district court erred in dismissing his failure-to-accommodate claim under the ADA because he did not include this claim in his KHRC charge and thus failed to exhaust his administrative remedies. In the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite to filing an ADA action. Jones, 502 F.3d at 1183. "We review the court's findings of jurisdictional facts for clear error and its determination of subject matter jurisdiction de novo." Id. A plaintiff's ADA claim in federal court is limited by the scope of the administrative investigation that can reasonably be expected to follow from the allegations of an administrative charge. Id. at 1186.

Lara asserts the district court erred because the KHRC charge form did not include a box to charge for "failure to accommodate" as the basis of a claim and because a failure to accommodate claim naturally arises from the discrimination claim he did allege. "The failure to mark a particular box creates a presumption that the charging party is not asserting claims represented by that box[, but] the presumption may be rebutted . . . if the text of the charge clearly sets forth the basis of the claim." Id. As the district court found, Lara did not allege any failure to accommodate or mention his failure-to-accommodate claim in the text

9

portion of his administrative charge. Moreover, we have concluded that an administrative charge alleging disability discrimination alone does not automatically exhaust administrative remedies for a failure-to-accommodate claim. Id. at 1187. Accordingly, we affirm the district court's dismissal of Lara's failure-to-accommodate ADA claim.

## III

The judgment of the district court is **AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge

10