**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 25, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DIANE SMITH,

      Plaintiff - Appellant,

v.

      No. 17-8055

CHEYENNE RETIREMENT
INVESTORS L.P., d/b/a Pointe Frontier
Retirement Community,

      Defendant - Appellee.
_____

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 2:16-CV-00184-NDF)**
_____

Bernard Q. Phelan, Cheyenne, Wyoming, for Plaintiff-Appellant.

Khale J. Lenhart, Hirst Applegate, LLP, Cheyenne, Wyoming, for Defendant-Appellee.

_____

Before **MATHESON**, **EBEL**, and **EID**, Circuit Judges.
_____

**EBEL**, Circuit Judge.
_____

     Plaintiff Diane Smith, a former employee of the Pointe Frontier assisted living

facility in Cheyenne, Wyoming, brings this suit under Title VII of the Civil Rights

Act of 1964 alleging that she was unlawfully terminated by Pointe Frontier in 2014 in

retaliation for filing a complaint with the United States Equal Employment Opportunity Commission ("EEOC") in 2012. Finding that Ms. Smith had failed to exhaust her administrative remedies, the district court dismissed her claim for lack of subject matter jurisdiction, and, in the alternative, found that there was no genuine issue of material fact and granted summary judgment for Defendant. We now AFFIRM the district court's decision that Plaintiff failed to exhaust her administrative remedies, and REMAND with instructions to VACATE the order and dismiss the suit without prejudice.

## I.    BACKGROUND

In 2012, Ms. Smith, then a food server at the Pointe Frontier assisted living facility, filed a complaint with the EEOC alleging that she had been harassed and intimidated by her supervisors and denied promotions and advancements all on the basis of her age and race, and in retaliation for previous discrimination complaints. ("2012 EEOC Charge"). The EEOC dismissed this charge in 2013, finding that "there was no reasonable cause to conclude that [Pointe Frontier] engaged in discriminatory acts detrimental to [Ms. Smith]." Aplt. App. at 106. On November 12, 2013, the EEOC issued a right-to-sue letter, giving her ninety days to file the claims alleged in the 2012 EEOC Charge in federal or state court. Ms. Smith did not pursue her 2012 claims in federal or state court, and her "window" to sue closed on February 10, 2014.

In early 2014, roughly the same time this window closed, Pointe Frontier hired Rayland Hepner, a shift leader whose responsibilities included overseeing Ms.

Smith's work. According to Ms. Smith, Mr. Hepner immediately began to "harass" her, by subjecting her to enhanced scrutiny compared to her colleagues. Id. at 202–04. Ms. Smith had previously served as a shift leader herself, and she testified that "the stuff that he was doing to me, I sure wasn't told to do it to nobody, and never did it to anybody." Id. at 204. Because this treatment began immediately after Mr. Hepner started, when there was "nothing he could have known about [Ms. Smith,]" id. at 202, Ms. Smith testified that she believed he "had been instructed" to treat her that way because she had filed the 2012 EEOC Charge, id.; see also id. at 203 ("He wouldn't – he wouldn't have had no other reason to – to my knowledge. I didn't know him. He was a new person.").

On April 7, 2014, Ms. Smith called the Pointe Frontier employee hotline to complain about the harassment she was receiving at Mr. Hepner's hands. Id. at 118–19. According to the log of the call, Ms. Smith detailed that she had been "harassed on a daily basis" for the past five weeks, and in addition to Mr. Hepner she also named James Oliver, the facility's general manager, and several other administrators as the perpetrators of this harassment. Id. at 118. She did so because she did "not understand who is instructing [Mr. Hepner] to behave in this manner, as previous shift leaders have not used the same methods in handling employees." Id. at 119. Two weeks later, on April 21, 2014, Ms. Smith was called into Mr. Oliver's office, and her employment was terminated.

Ms. Smith responded to her termination by filing a second Charge of discrimination with the EEOC. ("2014 EEOC Charge"). In the 2014 EEOC Charge,

3

Ms. Smith alleged that she was "subjected to disparate treatment and a hostile work environment and was fired from [her] server position after [she] complained." Id. at 129. In the section of the 2014 EEOC Charge entitled "DISCRIMINATION BASED ON," Ms. Smith checked the boxes for "RACE," "AGE," and "RETALIATION." Id. She elaborated by saying that she believed she had been "discriminated against based on my race/color (black) and age (56), and that I was retaliated against for complaining against [sic] discriminatory treatment[.]" Id.

Importantly for our current purposes, the 2014 EEOC Charge does refer back to the events of 2012. Id. at 129–30 ("Previous examples of disparate/discriminatory treatment occurred in September 2012 when demoted from being a shift leader."). While this sentence references the treatment that precipitated the 2012 EEOC Charge, it does not reference the 2012 EEOC Charge itself. Ms. Smith then elaborates in much greater detail about the complaints she made to management about Mr. Hepner in early 2014. Id. at 130 ("I complained to manager James Oliver on March 28, 2014 about Rayland's discriminatory treatment and how badly he talked to me . . . . He dismissed my complaints and tried to convince me that Rayland is a good guy."). Ms. Smith further notes that, on the basis of this conversation, she was "looked upon as a trouble maker for complaining." Id.

Finally, Ms. Smith concluded the 2014 EEOC Charge by alleging that "the real reason [she] was fired is because [she] complained against [Mr. Hepner's] discriminatory treatment." Id. At no point does the 2014 EEOC Charge reference

4

the 2012 EEOC Charge, and indeed, Mr. Hepner was not hired and did not become her supervisor until 2014.

In responding to the 2014 EEOC Charge, however, Pointe Frontier did reference Ms. Smith's earlier EEOC action. Pointe Frontier explained to the EEOC that this is "Ms. Smith's second EEO charge," and that previously "the EEOC decided in favor of Pointe Frontier." Id. at 135. Pointe Frontier went on to explain that Ms. Smith appealed the EEOC determination, but "after Pointe Frontier incurred thousands of dollars in legal fees to fight the appeal, Ms. Smith failed to complete her part in the appeal so the hearing officer granted a motion for default." Id. On April 4, 2016, the EEOC determined that, on the basis of the 2014 EEOC Charge, it was "unable to conclude that the information obtained establishes violations of the statutes," and provided Ms. Smith notice of her right to sue. Id. at 132.

Ms. Smith subsequently filed this lawsuit. In her brief Complaint, Ms. Smith alleged that her termination was "pretextual and in retaliation for filing the previous charge of discrimination in 2012." Id. at 7; see also id. ("The termination of the plaintiff by the defendant was motivated by the plaintiff's filing of a charge of discrimination with the [EEOC.]"). As evidence, Ms. Smith cited the facility's decision to reference the 2012 EEOC Charge in responding to the 2014 EEOC Charge. Ms. Smith's allegation that she was fired in retaliation for filing the 2012 EEOC Charge is the only ground for relief listed in the Complaint.

Pointe Frontier moved to dismiss for lack of subject matter jurisdiction, or, in the alternative, for summary judgment. As to the former, Defendant argued that Ms.

5

Smith had failed to exhaust her administrative remedies because the claim pled in her Complaint is not the same as what she pled in the 2014 EEOC Charge. Ms. Smith opposed both motions.

After holding a hearing on the motions, the district court granted the motion to dismiss for lack of subject matter jurisdiction, and, in the alternative, granted Defendant's motion for summary judgment. Ms. Smith timely appealed. Exercising appellate jurisdiction under 28 U.S.C. § 1291, we AFFIRM the district court's order of dismissal on the ground that Ms. Smith failed to exhaust her administrative remedies.

## II.    DISCUSSION

As a threshold matter, the district court treated Defendant's failure-to-exhaust argument as challenging the court's subject matter jurisdiction, in accord with several Tenth Circuit cases establishing the exhaustion requirement as such. Aplt. App. 240 (citing Chung v. El Paso Sch. Dist. #11, 659 F. App'x 953, 957 (10th Cir. 2016) (unpublished); E.E.O.C. v. JBS USA, LLC, 794 F. Supp. 2d 1188, 1199 (D. Colo. 2011)); see also MacKenzie v. City & Cty. of Denver, 414 F.3d 1266, 1274 (10th Cir. 2005) ("In the tenth circuit, a plaintiff must exhaust her claims before the EEOC as a prerequisite to federal court jurisdiction over her ADA claims."); Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir. 1996) ("Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII") (internal quotation marks omitted).

At the time the district court issued its opinion, these cases were still good law in the Tenth Circuit, although we had taken note of our status as the only circuit still to treat EEOC exhaustion as a jurisdictional requirement instead of an affirmative defense, see, e.g., Logsdon v. Turbines, Inc., 399 F. App'x 376, 378 n.2 (10th Cir. 2010) (unpublished), and we had begun to remove the jurisdictional label in analogous situations, see, e.g., Gad v. Kan. State Univ., 787 F.3d 1032, 1036 (10th Cir. 2017) (determining that verification of an EEOC Charge was not jurisdictional). Earlier this year, after the district court had issued its opinion in this case, a panel of this court gained authorization from all active judges to overrule our prior holding that failure to exhaust in the EEOC context was a jurisdictional requirement. Lincoln v. BNSF Rwy., — F.3d —, 2018 WL 3945875, *8 (10th Cir. Aug. 17, 2018) (citing United States v. Meyers, 200 F.3d 715, 721 (10th Cir. 2000) (holding that one panel "may overrule a point of law established by a prior panel after obtaining authorization from all active judges on the court")). Accordingly, the current state of the law in the Tenth Circuit is that "a plaintiff's failure to file an EEOC charge regarding a discrete employment incident merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim." Id.

In most cases, including this one, this distinction between a jurisdictional requirement and an affirmative defense is immaterial. "The characterization is important . . . only when the defendant has waived or forfeited the issue[,]" because if exhaustion is not jurisdictional, "the court must dismiss only if the issue has been

7

properly presented for decision." McQueen ex rel. McQueen v. Colo. Springs Sch. Dist. No. 11, 488 F.3d 868, 873 (10th Cir. 2007). Here, Pointe Frontier pled failure to exhaust as an affirmative defense in its Answer, and in its motion it affirmatively raised the issue of exhaustion for the district court's consideration. Therefore, even though the district court's stated rationale for dismissal—lack of subject matter jurisdiction—is no longer viable in light of Lincoln, if we agree that Ms. Smith failed to exhaust her administrative remedies we may affirm the district court on alternative grounds. See, e.g., Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1178 n.4 (10th Cir. 2007) (affirming dismissal on alternative grounds).

We review the district court's legal determination that a plaintiff has failed to exhaust her administrative remedies de novo. Thomas v. Parker, 609 F.3d 1114, 1117 (10th Cir. 2010).[1] Here, while it is uncontested that Ms. Smith did file the 2014 EEOC charge, thereby facially satisfying her duty to exhaust, Pointe Frontier argues that the claim she alleges in this lawsuit—unlawful retaliation for filing the 2012

---

[1] Some of our precedents, decided under a jurisdictional scheme, suggest that exhaustion of administrative remedies is a jurisdictional fact reviewed for clear error. See, e.g., McBride v. CITGO Petroleum Corp., 281 F.3d 1099, 1106 (10th Cir. 2002). That holds true, however, when the question at the heart of the exhaustion issue involves historical facts such as whether the plaintiff sufficiently cooperated with the administrative process, see, e.g., id. at 1106–07, or whether an EEOC charge was ever filed, see, e.g., Alcivar v. Wynne, 268 F. App'x 749, 755 (10th Cir. 2008) (unpublished). Where, as here, the issue does not depend on historical facts, but rather on the interpretation of the scope of an EEOC charge from the face of the charge itself, such interpretation is best viewed as a legal issue reviewed de novo. See Reese Expl., Inc. v. Williams Nat. Gas Co., 983 F.2d 1514, 1518 (10th Cir. 1993) ("Interpreting written documents is a question of law subject to de novo review.").

8

EEOC Charge—was not presented to the administrative agency as part of her 2014 EEOC Charge.

The exhaustion rule derives from two principal purposes: "1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim, which effectuates Title VII's goal of securing voluntary compliance." Ingels v. Thiokol Corp., 42 F.3d 616, 625 (10th Cir. 1994), abrogated on other grounds by Martinez v. Potter, 347 F.3d 1208 (10th Cir. 2003). To advance these purposes, after a plaintiff receives a notice of her right to sue from the EEOC, that plaintiff's claim in court "is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." MacKenzie, 414 at 1274. While we "liberally construe" the plaintiff's allegations in the EEOC charge, "the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim[.]" Jones v. U.P.S., Inc., 502 F.3d 1176, 1186 (10th Cir. 2007) (emphasis added). The ultimate question is whether "the conduct alleged [in the lawsuit] would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made [in the EEOC charge]." Martin v. Nannie & Newborns, Inc., 3 F.3d 1410, 1416 n.7 (10th Cir. 1993) overruled on other grounds as recognized by Davidson v. America Online, Inc., 337 F.3d 1179, 1185 (10th Cir. 2003).

While the 2014 EEOC Charge does allege retaliation, it is clear from the text of that charge that it does not encompass retaliation for having filed the 2012 EEOC Charge, which is the Title VII violation Ms. Smith now alleges in federal court. The

9

first line of the 2014 EEOC Charge alleges that Ms. Smith was "subjected to disparate treatment and a hostile work environment and was fired from my Server position after I complained." Aplt. App. at 129. While this alone would perhaps be sufficient to suggest the "complaint" referenced was the 2012 EEOC Charge, Ms. Smith spends the rest of the 2014 EEOC Charge making clear this is not the case. Ms. Smith elaborates that she "complained to manager James Oliver on March 28, 2014 about [Hepner's] discriminatory treatment," and that while nothing happened as a result of this complaint she "was looked upon as a trouble maker for complaining." Id. at 130. While this "complaint" to the General Manager is described in detail in the 2014 EEOC Charge, the 2014 EEOC Charge makes only a passing reference to the events that precipitated the 2012 EEOC Charge, and in fact never mentions that a charge was filed in 2012. Finally, the 2014 EEOC Charge concludes by saying "the real reason I was fired is because I complained against [sic] Rayland's discriminatory treatment." Id. (emphasis added). Given that Rayland Hepner was not hired at Pointe Frontier until 2014, that line alone makes clear that the 2014 EEOC Charge does not encompass the claims Ms. Smith now brings, namely that she was fired for filing the earlier 2012 EEOC Charge.

Recognizing that the 2014 EEOC Charge, on its face, does not reference the 2012 EEOC Charge, Ms. Smith urges us to consider Pointe Frontier's response, which does, in passing, mention the 2012 EEOC Charge. In responding to Ms. Smith's 2014 EEOC Charge, Pointe Frontier alerted the EEOC that this was "Ms. Smith's second EEO Charge . . . against Pointe Frontier[,]" and that the EEOC had

10

previously "decided in favor of Pointe Frontier[.]" Aplt. App. at 135. Pointe Frontier also referenced the case number of the 2012 EEOC Charge.

This argument has a certain appeal. After all, the test is whether the claim Ms. Smith now brings in federal court was within the scope of the administrative investigation that would "reasonably be expected to follow from the discriminatory acts alleged in the administrative charge." Jones, 502 F.3d at 1186 (emphasis in original). One might expect, given the reference to the 2012 EEOC Charge in Pointe Frontier's response, that the EEOC investigation into the allegations contained in the 2014 EEOC Charge would have included inquiry into the 2012 EEOC Charge, and whether any of the adverse employment actions Ms. Smith suffered can be traced back to her decision to file that complaint with the EEOC.

But we have consistently held, time and again, that the reasonable and likely scope of the investigation is determined by the allegations contained in the Charge itself, rather than in the Charge and any responsive documents. See, e.g., Id., 502 F.3d at 1186 ("[O]ur inquiry is limited to the scope of the administrative investigation that can reasonably be expected to follow from the discriminatory acts alleged in the administrative charge.") (second emphasis added); MacKenzie, 414 F.3d at 1274 ("A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC.") (emphasis added); Logsdon, 399 Fed. Appx. at 379 (refusing to enlarge the reasonable scope of EEOC investigation to

11

include adverse employment actions not referenced in charge but referenced in response).

And there is good reason for this requirement. After all, the twin purposes of the exhaustion requirement would be ill-served if an employer's response could expand the scope of the EEOC inquiry. See Ingels, 42 F.3d at 625 (stating purpose of limiting the court action to matters reasonably noticed in the EEOC claim was (1) to give employer notice of alleged violation and (2) to give EEOC opportunity to conciliate the claim). As to notice, that purpose militates explicitly in favor of using the Charge itself to establish the scope of the investigation so the employer knows exactly what allegations to defend itself against. And as to the second purpose, if we were to hold that a defendant's response to an EEOC Charge could expand the scope of that Charge, we would be incentivizing employers to respond to such charges in as bland and general a manner as possible. The goal for employers would be to avoid any language that could be used to expand the employee's claim beyond the face of the Charge itself, which would hinder the EEOC's ability to gather and collect enough detailed information to conciliate the claim.[2]

Because EEOC Charges are traditionally filed by non-attorneys, we have repeatedly emphasized that the Charges should be "liberally construe[d]" at all levels of their review. See, e.g., Jones, 502 F.3d at 1186; MacKenzie, 414 F.3d at 1274; Foster v. Ruhrpumpen, Inc., 365 F.3d 1191, 1195 (10th Cir. 2004). We stress that

---

[2] What claims the EEOC might reasonably be on notice of is, of course, fact specific, and our ruling here is necessarily cabined by the allegations in this 2014 EEOC charge.

principle again here, and have applied it to the 2014 EEOC Charge before us. But even construed liberally, the 2014 EEOC Charges raises two claims for relief: (1) that Ms. Smith was repeatedly intimidated and harassed by Rayland Hepner on the basis of her age and race, and (2) that she was fired for complaining about this treatment to management. Aplt. App. at 130 ("I believe I was singled out by Rayland because of my race/color and age and that he and other members of management plotted to fire me for complaining."). No matter how liberally we may construe these two grounds for relief, they do not include Ms. Smith's claim in this lawsuit that her termination "was motivated by [her] filing [in 2012] of a charge of discrimination with the [EEOC]." Id. at 7.

Accordingly, because Ms. Smith's claim was not within the scope of her 2014 EEOC Charge, we AFFIRM the district court's decision to dismiss the complaint. However, because the district court continued on to consider Pointe Frontier's motion for summary judgment in the alternative—holding that summary judgment was appropriate—it ultimately dismissed Ms. Smith's claim with prejudice. "Ordinarily, a dismissal based on a failure to exhaust administrative remedies should be *without* prejudice." Gallagher v. Shelton, 587 F.3d 1063, 1068 (10th Cir. 2009) (emphasis in original). Because we express no opinion on the merits of Pointe Frontier's motion for summary judgment, and without considering the timeliness of any subsequent EEOC Charges Ms. Smith might file, her complaint should be dismissed without prejudice to filing a second such complaint in the future should she be able to exhaust her administrative remedies and plead a timely complaint.

13

Therefore we REMAND to the district court with instructions to VACATE its previous order in its entirety and DISMISS the complaint without prejudice.  Cf. United States v. Munsingwear, Inc., 340 U.S. 36, 39 (1950) (holding that when a claim becomes moot while a case is pending on appeal the proper disposition is to vacate the judgment of the lower court and remand with instructions to dismiss).