FILED
United States Court of Appeals
Tenth Circuit

February 8, 2022

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ANGELICA HALE,

      Plaintiff - Appellant/Cross-
      Appellee,

v.

EMPORIA STATE UNIVERSITY,

      Defendant - Appellee/Cross-
      Appellant.

No. 21-3007 & 21-3018
(D.C. No. 5:16-CV-04182-DDC)
(D. Kan.)

_____

**ORDER AND JUDGMENT***
_____

Before **McHUGH**, **MORITZ**, and **ROSSMAN**, Circuit Judges.
_____

In this employment-discrimination case, the district court found Emporia State

University (ESU) liable under Title VII for retaliating against employee Angelica Hale,

and it awarded her back pay.  Ms. Hale now appeals pro se from the district court's order

that denied her motion for reconsideration of the back-pay amount.  ESU cross-appeals

---

   * After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

from the judgment imposing liability for retaliation.  Exercising jurisdiction under

28 U.S.C. § 1291, we affirm in both appeals.

## BACKGROUND

Ms. Hale is African American.  ESU, located in Emporia, Kansas, employed her in

its School of Library and Information Management (SLIM) as Assistant to the Dean,

Gwen Alexander, Ph.D.  Ms. Hale worked in that position pursuant to three temporary

appointments from July 2014 to July 2015.  Ms. Hale's husband, Dr. Melvin Hale, also

African American, worked as an Assistant Professor in SLIM.

Sometime around the Spring of 2015, Dean Alexander had conversations with

ESU's Provost, David Cordle, Ph.D., about creating a permanent position for Ms. Hale.

As explained below, however, that position was never posted.

On April 8, 2015, a Caucasian student who worked with Ms. Hale discovered that

someone had written a racial epithet, "NIGGAZ," in her (the student's) notebook.  The

student reported the incident to Ms. Hale, who texted a photo of the epithet to Dr. Hale.

Dr. Hale in turn reported the incident to Dean Alexander.

The Hales soon concluded that "Dean Alexander did not plan to do anything about

the racist message," R., Vol. I at 42, so they met with Provost Cordle on June 26, 2015.

Twelve days later, on July 8, Dean Alexander informed Ms. Hale that her third temporary

appointment would expire on August 15 and she would not be given a fourth

appointment.  But given "ESU's policy limiting temporary appointments to a year,

Provost Cordle already had decided not to offer Ms. Hale another temporary

appointment."  R., Vol. II at 944.

2

On July 10, ESU's Interim President ordered an investigation into whether the racial epithet qualified as "a hate crime" against Ms. Hale and whether "racial discrimination occurred in SLIM during the 2014-15 Academic Year." R., Vol. I at 407. On July 27, before the investigation was finished and before Ms. Hale completed her third temporary appointment, she resigned.

Several weeks later, on August 20, ESU's Human Resources Director completed the investigation. He concluded that no hate crime occurred and that the epithet was "a stand-alone event, [that] in and of itself d[id] not create a discriminatory or hostile environment." *Id.* at 409. But the Director also concluded that (1) "a common understanding in the department existed that the [permanent] position would be posted in such a way that the result would be [Ms. Hale's] selection as [the] candidate"; and (2) Ms. Hale's "meeting with the provost did play a part in D[ean] Alexander's decision not to . . . post the vacancy [for the permanent position]." *Id.*; *see also* R., Vol. II at 596.

The Hales relocated to Arizona in December 2015, upon being notified that ESU would not renew Dr. Hales' teaching contract when it expired in May 2016.

In December 2016, Ms. Hale filed this pro se Title VII retaliation lawsuit against ESU.[1] After a two-day bench trial, the district court found that "Ms. Hale ha[d] not shown by a preponderance of the evidence that ESU would have offered her a fourth temporary appointment but for her complaint [about the racial epithet]." R., Vol. II at

---

[1] Ms. Hale also asserted a First Amendment claim against Provost Cordle, Dean Alexander, and ESU's Interim President. The district court entered summary judgment against Ms. Hale on that claim, and it is not at issue here.

415. The district court further found, however, that Ms. Hale had "established by a preponderance of the evidence that—but for her complaint to Provost Cordle on June 26—Dean Alexander would have posted a position for a marketing coordinator in the SLIM program and would have selected Ms. Hale to fill that position." *Id.* at 416.

In regard to damages, the district court found only speculative evidence of compensatory damages, so it awarded Ms. Hale nominal damages of $1. The district court then held an evidentiary hearing on the issues of back pay and front pay, during which Ms. Hale was represented by counsel. After post-hearing briefing, the district court awarded Ms. Hale nine months of back pay, $48,312.03, which included sums for her salary, retirement benefits, and tuition benefit.[2]

In calculating the back-pay amount, the district court set the beginning date of back pay as August 15, 2015—the date Ms. Hale's third temporary appointment expired—and it ended the period a full nine months later, in May 2016, to coincide with the expiration of Dr. Hale's teaching contract. For that end date, the district court relied on evidence that (1) the Hales moved from California to Emporia in 2014 because of Dr. Hale's job at ESU and they intended to stay until retirement because of Dr. Hale's tenure-track position; and (2) Ms. Hale had a "consistent history of frequent job changes." *Id* at 955. Given ESU's non-renewal of Dr. Hale's teaching contract, the district court was "convinced that Ms. Hale likely would have departed ESU in May 2016" even if ESU had given her the permanent position. *Id.* at 954. The district court

---

[2] Prejudgment interest in the amount of $15,991.28 was added to the award, resulting in a total back-pay award of $64,303.31.

noted that during Ms. Hale's testimony, when she was asked whether she would have remained at ESU if ESU had given her the permanent position but not renewed Dr. Hale's contract, she did not answer the question. Instead, she asserted that the decision not to renew Dr. Hale's contract was retaliatory, a claim the district court observed had been rejected by a jury in a separate case. Finally, the district court rejected a front-pay award, reasoning that the back-pay award sufficiently redressed ESU's retaliatory conduct. The district court entered judgment on the award.

Ms. Hale, again proceeding pro se, filed a motion for reconsideration. She argued there was "no basis to assume that [she] would have just up and left her enviable position at ESU after May 2016 when the Hales needed her income the most," *id.* at 978, and that the district court's back-pay award was a "slap in the face," suggesting that the district court was "bias[ed]" and "out to render [her] Title VII victory over ESU hollow and empty[.]" *Id.* at 972. The district court denied the motion, reiterating that Ms. Hale's own testimony failed to show she would have remained in Emporia had she been given the permanent position.

## DISCUSSION
### I. Title VII Retaliation (Cross-Appeal (No. 21-3018))
### A. Exhaustion

ESU argues that Ms. Hale failed to exhaust her claim that ESU committed retaliation by not creating a new, permanent job for her. According to ESU, no basis for that claim appears in Ms. Hale's administrative complaint. The district court rejected ESU's exhaustion argument when denying summary judgment, and we discern no error. *See Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) (reviewing

de novo the "determination [whether] a plaintiff has failed to exhaust her administrative remedies").

"A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Id.* 1165 (emphasis and internal quotation marks omitted). "[W]e liberally construe the plaintiff's allegations in the EEOC charge" and ask whether "the conduct alleged in the lawsuit would fall within the scope of an EEOC investigation which would reasonably grow out of the [administrative] charges actually made." *Id.* at 1164 (brackets and internal quotation marks omitted).

Ms. Hale's administrative charge alleged that ESU terminated her by not renewing her contract in retaliation for complaining about the racial epithet. The charge further alleged that Dean Alexander failed to act when notified of the epithet. Based on these allegations, a reasonable EEOC investigation would include Dean Alexander's response to the incident and her involvement in the circumstances leading to the end of Ms. Hale's employment at ESU. Communications between Dean Alexander and Ms. Hale, including the nature of Ms. Hale's continued employment expectations, would be within the reasonable scope of the EEOC's investigation.

We conclude that Ms. Hale exhausted her retaliation claim.

## B. Hiring Authority

ESU argues the district court's liability determination is without evidentiary support. ESU contends the evidence at trial showed that Dean Alexander had no authority to create a new, permanent job and hire Ms. Hale for that job. ESU maintains

6

that only Provost Cordle had that authority and there could be no retaliation because he decided against creating a new position before learning of the racial epithet directed at Ms. Hale. We conclude, however, that the district court's liability determination has record support.

"Following a bench trial, we review the district court's factual findings for clear error and its legal conclusions de novo." *Acosta v. Foreclosure Connection, Inc.*, 903 F.3d 1132, 1134 (10th Cir. 2018) (internal quotation marks omitted). "We will reverse under the clear error standard only if the district court's finding is without factual support in the record or if, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made." *Id.* (internal quotation marks omitted).

As the district court observed, ESU did not proffer evidence that Provost Cordle had *sole* authority to create a new position for Ms. Hale. Indeed, Provost Cordle testified that Dean Alexander "talked with [him] on a number of occasions about creating a permanent position that would cover the same duties that [Ms. Hale] had." R., Vol. II at 641. Provost Cordle explained that "Dean Alexander certainly indicated . . . an interest in creating such a position" and "[s]he believed that she had funds available to her to do that." *Id.* at 738. Although Provost Cordle testified he "was skeptical" and "not prepared to agree," *id.* at 734, his reluctance is not evidence that Dean Alexander lacked control over the creation of a position for Ms. Hale. Rather, Dean Alexander pursued the creation of a permanent job for Ms. Hale, which "would be posted in such a way that the result would be [Ms. Hale's] selection as candidate." *Id.* at 596. And, as found during ESU's internal investigation, Dean Alexander "change[d] . . .direction" in terms of

7

recruiting Ms. Hale for the permanent job just twelve days after Ms. Hale complained to Provost Cordle about the Dean's handling of the racial epithet. *Id.* at 409 (internal quotation marks omitted). The investigation then concluded that Ms. Hale's "meeting with the provost did play a part in D[ean] Alexander's decision not to . . . post the vacancy." *Id.* at 596.

Nevertheless, ESU asserts that our focus should be on Provost Cordle's motive, as he was the final, if not sole, decision-maker. *See Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 715 (10th Cir. 2014) ("[I]f the supervisor's ability to make employment-related decisions is contingent on the independent affirmation of a higher-level manager or review committee, we focus on the motive of [the] final decisionmaker."). But ESU does not cite any evidence that Provost Cordle independently decided not to create the new position for Ms. Hale. The evidence at trial established that Dean Alexander decided to pursue the creation of that position for Ms. Hale and then decided against it. Although Provost Cordle was skeptical of Dean Alexander's proposal for creating the position and was not prepared to approve it, there is no evidence he either precluded the position's creation or had any involvement in the position not being posted. Indeed, as found during ESU's internal investigation, there was "a common understanding in the department" that Ms. Hale would be selected for the new position and it was Dean "Alexander's decision not to . . . post the vacancy." R., Vol. II at 596.

Because ESU has identified no clearly erroneous factual finding or legal error by the district court, we affirm the district court's liability determination.

**II. Reconsideration of the Back-Pay Award (Appeal No. 21-3007)[3]**

We review for an abuse of discretion the district court's denial of Ms. Hale's motion for reconsideration. *See Ysais v. Richardson*, 603 F.3d 1175, 1180 (10th Cir. 2010). "We will not disturb such a decision unless we have a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Id.* (internal quotation marks omitted).

Reconsideration is available to address "an intervening change in the controlling law," "new evidence previously unavailable," and "the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Although Ms. Hale was represented by counsel during the evidentiary hearing on back pay and the filing of post-hearing briefs, we will liberally construe the

---

[3] While Ms. Hale's motion for reconsideration was pending, she sought to execute on the judgment. To avoid having its assets seized, ESU paid the judgment to Ms. Hale. Now, ESU moves to dismiss Ms. Hale's appeal, arguing that she waived her right to appeal or mooted her eventual appeal by attempting to collect the district court's back-pay award and then accepting ESU's payment. We disagree.

"Acceptance of payment of an unsatisfactory judgment does not, standing alone, amount to an accord and satisfaction precluding appeal." *Klein v. Grynberg*, 44 F.3d 1497, 1502 (10th Cir. 1995). Rather, "[i]t is the mutual manifestation of an intention to bring the litigation to a definite conclusion upon a basis acceptable to all parties which bars a subsequent appeal, and not the fact, standing alone, that benefits under the judgment were accepted." *Id.* (internal quotation marks omitted). ESU does not identify any evidence that Hale intended receipt of the back-pay award as full satisfaction of her Title VII retaliation claim. Indeed, she contested that award's amount immediately upon the district court's entry of judgment, and she continues to dispute that amount on appeal. Nor is Ms. Hale's appeal moot. *See United States v. Meyers*, 200 F.3d 715, 718 (10th Cir. 2000) (explaining that mootness occurs "when the injury for which an appellant seeks judicial relief disappears or is resolved extrajudicially prior to the appellate court's decision").

filings she made in this case while pro se, but we cannot serve as her counsel.

*See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

Ms. Hale challenges the end date of her back-pay award. Ordinarily, "[b]ackpay starts at the time of deprivation and ends when the evidence is submitted to the factfinder at the close of trial." *Tudor v. S.E. Okla. State Univ.*, 13 F.4th 1019, 1040 (10th Cir. 2021). Here, the bench trial ended on January 10, 2019. But "[d]istrict courts possess considerable discretion" when devising remedies for Title VII violations, and an employee's back-pay award may be limited. *Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1203 (10th Cir. 2015); *see, e.g.*, *Ford Motor Co. v. EEOC*, 458 U.S. 219, 234, 236 (1982) (ending back pay when "the victim of discrimination . . . finds a better or substantially equivalent job" because she no longer suffers "the ongoing ill effects of the defendant's refusal to hire"); *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 342 (10th Cir. 1986) (observing that an employee's resignation under circumstances not amounting to constructive discharge limits back pay to "the difference between actual pay and the amount [the employee] would have made had [s]he not been discriminated against[,] until [s]he quit" (brackets and internal quotation marks omitted)).[4]

---

[4] Because Ms. Hale resigned before her final temporary appointment expired, the district court denied back pay for the time between her resignation on July 27, 2015, and her appointment's expiration on August 15, 2015. *See Derr*, 796 F.2d at 342. Ms. Hale does not appear to contest the district court's denial of back pay for this period, and we do not consider it. *See Becker v. Kroll*, 494 F.3d 904, 913 n.6 (10th Cir. 2007) (stating that when the appellant does not develop an argument in her opening brief, we deem that argument waived).

Ms. Hale argues that the district court erred by connecting her end date to the expiration of her husband's teaching contract in May 2016. As viewed by Ms. Hale, the district court's decision "marginalized [her] by attacking her character and gender and personhood, and minimiz[ed] the culpability of [ESU]," thereby "opening the door for a charge of bias and prejudice" against the district court. Aplt. Opening Br. at 7, 8. But the district court's decision was supported by Ms. Hale's own testimony at the evidentiary hearing—where she was represented by counsel. In particular, Ms. Hale testified on direct examination that Dr. Hale's "tenure track position" at ESU "[d]efinitely" motivated her desire to accept a permanent position at the school. R., Vol. II at 1047-48; *see also id.* at 1053 (Ms. Hale's testimony that she intended to live out her life in Kansas "[e]specially with [her] husband taking a tenure track job as a professor"). And on cross-examination, Ms. Hale was given the opportunity to disconnect the duration of her permanent position at ESU from Dr. Hale's employment, and she failed to do so. Specifically, she was twice asked whether she would have decided to remain in the permanent position if Dr. Hale's teaching contract were not renewed. She failed to respond to the question, answering instead that she and Dr. Hale "would probably still both be there" were it not for their "reporting of the incident." *Id.* at 1068. But as the district court pointed out, Dr. Hale was not successful in establishing a retaliatory motive in the non-renewal of his teaching contract.

To the extent the district court relied on the limited duration of Ms. Hale's prior jobs as indicating she was unlikely to remain at ESU if Dr. Hale no longer taught there, Ms. Hale suggests that discrimination "may have" played a part in her tenure at those

11

jobs, and she faults the district court for not inquiring about that possibility. Aplt. Opening Br. at 11. But it is not the role of the district court to assist litigants—especially counseled litigants—in the presentation of their cases. Ms. Hale cites no evidence in the record showing that the district court misconstrued the character of her work history. *See Garrett*, 425 F.3d at 841 (observing that a pro se appellant must offer "more than a generalized assertion of error" and include "citations to supporting authority" (internal quotation marks omitted)).

We conclude that the district court did not abuse its discretion in denying Ms. Hale's motion for reconsideration of the back-pay award.[5]

## CONCLUSION

In Ms. Hale's appeal (No. 21-3007), we affirm the district court's order denying reconsideration of its back-pay award. In ESU's cross-appeal (No. 21-3018), we affirm

---

[5] Ms. Hale suggests that her back-pay end date should have been the date she would have completed her bachelor's degree and then a master's degree at ESU. We need not address that proposed end date, however, given that Ms. Hale has not shown the district court clearly erred or exceeded its discretion in selecting May 2016 as her end date. To the extent Ms. Hale contests the district court's denial of a front-pay award, i.e., an award of money for time after the district court's judgment, she provides no more than a perfunctory argument, which we do not consider. *See United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) (stating that this court does not consider "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation" (internal quotation marks omitted)).

12

the district court's judgment finding ESU liable for Title VII retaliation.  ESU's motion

to dismiss is denied.

Entered for the Court


Carolyn B. McHugh
Circuit Judge
