**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 14, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

CRYSTAL BOND,

    Plaintiff - Appellant,

v.

CHRISTINE WORMUTH, Secretary, U.S. Department of the Army,

    Defendant - Appellee.

No. 22-5019
(D.C. No. 4:20-CV-00594-GKF-SH)
(N.D. Okla.)

_____

## ORDER AND JUDGMENT[*]

_____

Before **TYMKOVICH**, **KELLY**, and **MATHESON**, Circuit Judges.

_____

Crystal Bond appeals the district court's grant of summary judgment in favor of the U.S. Army Corps of Engineers ("Army Corps") on her employment discrimination claims under the Rehabilitation Act, Title VII, and 5 U.S.C. § 2302. Although the court determined that Ms. Bond failed to exhaust her administrative remedies, it dismissed these claims on the merits. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

summary judgment for failure to exhaust administrative remedies and remand to the

district court to dismiss these claims without prejudice.

## I.  BACKGROUND

### A. *Factual History*

In early 2018, Ms. Bond, a cartographer with the Army Corps, was diagnosed

with post-traumatic stress disorder ("PTSD").  Beginning in March 2018, she

submitted successive applications for unpaid leave under the Family Medical Leave

Act ("FMLA").  With each application, Ms. Bond attached documentation from her

counselor, Lisa Cragar, who explained that Ms. Bond's PTSD prevented her from

returning to work.[1]  Ms. Bond's supervisor, Dan Hernandez, granted each application

until Ms. Bond had used the 12 weeks permitted under the FMLA.  He informed Ms.

Bond that she would "be expected to return to work" after that period.  Suppl. App.,

Vol. I at 189.

During May and June, Ms. Bond made oral requests to telework.  Mr.

Hernandez denied these requests.  While absent from work, Ms. Bond applied for

Social Security disability income and workers' compensation.  The Social Security

Administration ("SSA") eventually denied Ms. Bond's application, explaining that

---

[1] In Ms. Bond's first FMLA application, Ms. Cragar certified that Ms. Bond "needs a minimum of 4 weeks off work to process her grief and trauma."  App., Vol. I at 51-54.  In her second FMLA application, Ms. Cragar stated that Ms. Bond had "shown some worsening symptoms of grief, panic, and anxiety" and recommended that she "continue work leave for a minimum of another 6 months then re-evaluate progress at that time."  Suppl. App., Vol. I at 184-87.

her condition was not severe enough to keep her from doing "simple, routine work." *Id*. at 201. In her submission to the Office of Workers' Compensation in the Department of Labor, Ms. Bond included Ms. Cragar's work capacity evaluation, which reported that Ms. Bond could work "0" hours a week and that "alternative work locations would not improve [Ms. Bond's] ability to perform work duties." *Id*. at 204.

On May 25, 2018, Ms. Bond's FMLA leave expired, but she did not return to work or respond to Mr. Hernandez's inquiries.[2] In September, she wrote a letter to Mr. Hernandez stating that "based on my medical condition, symptoms, diagnosis, medications and prognosis, for me to return to the Cartographer Position at [the Army Corps] is not physically or psychologically possible, for the foreseeable future." *Id.* at 199-200. She requested workers' compensation and immediate disability retirement. She attached the letter from the SSA denying her request for disability benefits.

---

[2] Mr. Hernandez repeatedly attempted to contact Ms. Bond but received no response. In June, he notified her that she had not given him a "medical provider's prognosis" nor "any information indicating whether your condition has improved or resolved" and warned that "[u]nless you provide me medical documentation regarding your availability to return to work, there appears to be no foreseeable end to your absence." Suppl. App., Vol. I at 192-94. In September, Mr. Hernandez sent another notification informing Ms. Bond that she had been in absent without leave ("AWOL") status for 448 hours and warning that if she did not "return to work on a full-time and regular basis, disciplinary action may be taken, up to and including removal from federal service." *Id.* at 198.

Mr. Hernandez, understanding the SSA determination to confirm that Ms. Bond could work, requested "a statement from your medical provider indicating your ability to return to work, the likely timeframe of doing so, the type of work you are capable of performing, and whether an accommodation may be appropriate." *Id*. at 206-07. He attached the Department of Labor reasonable accommodation form. Ms. Bond responded that she could not "return to any of my past work, or, my former career," but that she "could probably work something low stress, simple/routine/repetitive, local, with no commute" and suggested "stuffing envelopes from the safety of my own home." *Id.* at 209. She reiterated that "I am not able to fulfill th[e] responsibilities" of a cartographer. *Id*.

When Ms. Bond returned the reasonable accommodation form, she wrote, "I don't know what my options are" in the space provided to request an accommodation. *Id.* at 215. Ms. Cragar submitted a medical evaluation stating she could not "see or identify any accommodations that could be made to [Ms. Bond's] current job position that could allow her to complete the mental tasks needed for the job." *Id.* at 216.

In January 2019, the Army Corps sent Ms. Bond a Notice of Proposed Removal for excessive absence and absence without leave. Ms. Bond did not appeal the notice and confirmed that she was "unable to work." *Id.* at 224-25. Her removal from the Army Corps became effective on March 15, 2019. She was given mailed notice that her health benefits would expire in 31 days.

4

Months later, Ms. Bond contacted Duane Braxton, a human resources representative for the Army Corps, about her lapsed medical insurance. On October 25, 2019, Mr. Braxton sent an email to Ms. Bond explaining that her insurance had lapsed because she had not elected coverage after being removed from service. Ms. Bond responded to that email on November 7, 2019, and received no further response.

## B. *Procedural History*

On December 12, 2019, Ms. Bond contacted the EEOC of Tulsa, Oklahoma, alleging she had experienced discrimination.[3] The Tulsa District Office dismissed Ms. Bond's formal EEO Complaint for untimely contact with an EEO counselor under 29 C.F.R. § 1614.107(a)(2). Ms. Bond appealed to the EEOC Office of Federal Operations, which affirmed the dismissal for untimely EEO Counselor contact and issued a right-to-sue letter. In its decision, the EEOC noted that although Ms. Bond claimed her inability to read her removal notice until November 2019 was the reason for her delayed contact, its investigation concluded that she "was able to think, read, and communicate clearly during this period." Suppl. App., Vol II at 444.

Ms. Bond sued the Secretary of the Army as the head of the Army Corps on November 23, 2020. She filed an amended complaint the next day, asserting

---

[3] The parties dispute whether the record shows Ms. Bond initiated contact with the EEOC in December 2019 or February 2020. As the district court did, we draw all reasonable inferences in Ms. Bond's favor on summary judgment review and use the earlier date—December 12, 2019—as the date of first contact.

5

violations of (1) the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et. seq.*; (2) 5 U.S.C. § 2302 for prohibited personnel practices; (3) the Rehabilitation Act, 29 U.S.C § 791; (4) Title VII for unlawful discrimination based on sex or gender; and (5) 29 U.S.C. § 1140 for interference with protected rights. The Army Corps moved to dismiss, and the district court dismissed the ADA and 29 U.S.C. § 1140 claims with prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). At summary judgment, the district court dismissed the remainder of Ms. Bond's claims. It held that she had failed to exhaust her administrative remedies and that her claims failed on the merits. The court entered judgment dismissing "the action. . . on the merits." App., Vol. III at 263.

## II. **DISCUSSION**

On appeal, Ms. Bond asserts the district court erred in granting the Army Corps' motion for summary judgment.[4] Ms. Bond does not adequately challenge the district court's holding that she did not exhaust her administrative remedies, and even had she adequately addressed this issue, she failed to initiate the administrative process in a timely manner. We affirm the district court's grant of summary judgment to the Army Corps on this ground.

---

[4] Ms. Bond has not appealed the district court's Rule 12(b)(6) dismissal order. Thus, her claims under the ADA and 29 U.S.C. § 1140 are not at issue.

A. *Standard of Review*

"We review summary judgment determinations de novo, applying the same standard as the district court." *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014). "We view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in his or her favor." *Osborne v. Baxter Healthcare Corp.*, 798 F.3d 1260, 1266 (10th Cir. 2015). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Cir. P. 56(a).

"The issue whether a plaintiff has exhausted her administrative remedies is a legal question that we also review de novo." *Dossa v. Wynne*, 529 F.3d 911, 913 (10th Cir. 2008).

B. *Legal Background*

The Rehabilitation Act requires federal employers to "provide reasonable accommodations to disabled employees." *Sanchez v. Vilsack*, 695 F.3d 1174, 1177 (10th Cir. 2012); *see* 29 U.S.C. § 794.[5] Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [her] compensation, terms,

---

[5] The Rehabilitation Act incorporates the ADA definition of "disability" as "a physical or mental impairment that substantially limits one or more major life activities." 29 U.S.C. § 705(9)(B) (referring to 42 U.S.C. § 12102(1)(A)). The Army Corps does not dispute, for purposes of this appeal, that Ms. Bond is disabled within the meaning of the statute. *See, e.g.,* Aplee. Br. at 18.

conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Both the Rehabilitation Act and Title VII require a claimant to "comply with specific administrative complaint procedures in order to exhaust their administrative remedies" before bringing a discrimination claim in federal court. *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020) (quotations omitted); *see also Green v. Brennan*, 578 U.S. 547, 550 (2016). Federal employees must "initiate contact" with an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). Although the "regulatory exhaustion requirement is not a jurisdictional prerequisite," it is a "claims-processing rule that the employer may raise as an affirmative defense." *Hickey*, 969 F.3d at 1118. This defense is "subject to waiver, estoppel, and equitable tolling," *see Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1183 (10th Cir. 2018), but a "court must enforce this exhaustion requirement if the employer properly raises it," *Hickey*, 969 F.3d at 1118.

Section 2302 of Title 5 prohibits the federal government from implementing personnel practices that discriminate against employees on the basis of protected statuses. 5 U.S.C. § 2302(b)(1). When a personnel action is sufficiently serious, like removal or demotion, *and* the employee alleges the action constituted discrimination prohibited by another federal statute, the employee's claim is considered a "mixed case." *See Kloeckner v. Solis*, 568 U.S. 41, 44 (2012). A federal employee with a mixed case has the choice to initiate a complaint either with (1) the agency's EEO office or (2) the Merit Systems Protection Board ("MSPB"). *See* 29 C.F.R.

§ 1614.302(b). Because an employee may not pursue a mixed case in two forums, "[w]hichever is filed first shall be considered an election to proceed in that forum" and the employee must exhaust administrative remedies consistent with the forum's timeliness constraints. *See Jones v. U.S. Dep't of Just.*, 111 F. Supp. 3d 25, 31 (D.D.C. 2015) (quotations omitted); *see also* 29 C.F.R. §§ 1614.302(c)(1), 1614.105(a)(1).

## C. *Analysis*

The Army Corps asserted failure to exhaust as an affirmative defense. Dist. Ct. Doc. 11 at 7-13. The district court found that Ms. Bond did not exhaust her administrative remedies because she failed to contact the EEOC within 45 days of a qualifying act of discrimination.[6] We affirm the district court's grant of summary judgment for the Army Corps on this ground.

### 1. **Waiver**

Ms. Bond has not adequately appealed the district court's determination that she failed to exhaust her administrative remedies. Although she states in the "issues presented" section of her opening brief that her contact with the EEOC was timely, *see* Aplt. Br. at 10, she does not develop this argument. In her "statement of the case" section, she identifies November 7, 2019—the date she sent her final email to

---

[6] Ms. Bond brought her mixed case under 5 U.S.C. § 2302 to the EEOC rather than the MSPB. In choosing that forum, she is bound to the EEOC's 45-day limitations period for all her claims. *See Jones*, 111 F. Supp. 3d at 31 ("A plaintiff may file a mixed-case complaint with his agency's EEO office or with MSPB, but not both.").

Mr. Braxton—as the "most recent adverse action by the Agency," but she proffers no authority to support her theory that an email *she* sent can constitute discrimination on the part of her employer.  Aplt. Br. at 20.

The Army Corps contends that Ms. Bond has "arguably abandon[ed]" her exhaustion argument.  Aplee. Br. at 23 n.4.  We agree.  Her omission of an exhaustion argument in her opening brief waives the issue.  *See Utah Env't Cong. v. Bosworth*, 439 F.3d 1184, 1194 n.2 (10th Cir. 2006) ("An issue mentioned in a brief on appeal, but not addressed, is waived.").  Because "issues designated for review are lost if they are not actually argued in the party's brief," *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (quotations omitted), she must do more than merely list exhaustion as an issue on appeal.  She did not do more, so she has waived the issue of whether her contact with the EEOC was timely.

2.  **Failure to Contact an EEO Counselor Within 45 Days**

Even if Ms. Bond had presented an adequate exhaustion argument, we hold, like the district court, that her contact with the EEOC was untimely.  Ms. Bond cannot identify "an adverse employment action" such as "firing" or a "decision causing a significant change in benefits" that occurred within 45 days of her contact with the EEOC.  *See Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1316 (10th Cir. 2017) (quotations and alterations omitted).

The only event within 45 days of Ms. Bond's contact with the EEOC on December 12, 2019, was the November 7, 2019 email she sent to Mr. Braxton

10

inquiring about her health insurance.  But this email was not a qualifying adverse employment action.

First, Ms. Bond's lapse in medical insurance was not an independent discriminatory act but a consequence of her termination,[7] and a challenge on December 12, 2019, to Ms. Bond's March 15, 2019 termination of employment would have been untimely.  *See Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) (quotations omitted) (The "proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful.").

Second, Ms. Bond's own email on November 7, 2019, cannot constitute an "adverse employment action" or a "decision causing a significant change in benefits" because it was her act, not the Army Corps'.  *Hiatt*, 858 F.3d at 1316.  As the district court explained, "the relevant action is that of the employer, not the employee." Suppl. App., Vol. II at 514.

Because Ms. Bond fails to identify any adverse employment action within 45 days of her contact with the EEOC, the district court correctly determined that she failed to properly exhaust her administrative remedies, warranting dismissal of her claims.

Nor is Ms. Bond entitled to equitable tolling based on her argument that her "continuing symptoms affected her ability to timely receive her mail and to make timely responses."  Aplt. Br. at 21.  Equitable tolling applies when an employee is

---

[7] As noted above, when Ms. Bond was fired on March 15, 2019, she was given notice that her medical insurance would expire 31 days later.

"lulled into inaction by her past employer" or "actively misled," not when the employee simply "failed to exercise due diligence in preserving h[er] legal rights." *Moneoya v. Chao*, 296 F.3d 952, 957-58 (10th Cir. 2002) (quotations omitted). Nothing in the record suggests that Ms. Bond was "actively misled" or otherwise prevented from making timely contact with the EEOC. On the contrary, Ms. Bond pursued disability retirement and workers' compensation benefits, and she applied for Social Security benefits while her symptoms persisted. After her termination and before contacting the EEOC, she corresponded with Mr. Braxton. The district court concluded that estoppel was inappropriate because Ms. Bond was "capable of pursuing [her] own claim." Suppl. App., Vol. II at 516 (quoting *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1269 (10th Cir. 1996)). We agree.

## III. CONCLUSION

We affirm summary judgment for the Army Corps on the ground that Ms. Bond failed to exhaust her administrative remedies. In addition to addressing the exhaustion issue, the district court ultimately granted summary judgment in favor of the Army Corps by determining that Ms. Bond's claims lacked merit. "Because we express no opinion on the merits of [the Army Corps'] motion for summary judgment" and address only the exhaustion issue, and because "dismissal based on a failure to exhaust administrative remedies should be *without* prejudice," *Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1166 (10th Cir. 2018) (quotations omitted),[8]

[8] Although exhaustion is no longer a jurisdictional requirement, we still dismiss unexhausted claims without prejudice. *See Smith*, 904 F.3d at 1166; *see also*

we remand to the district court with instructions to revise its summary judgment

order to dismiss Ms. Bond's claims at issue here without prejudice and to revise the

judgment accordingly.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

---

*Joritz v. Univ. of Kan.*, No. 20-3234, 2022 WL 817968, at *3 (10th Cir. Mar. 18, 2022) ("A dismissal [for failure to exhaust] is ordinarily without prejudice," and this is "true whether or not the failure to exhaust is considered jurisdictional."); *Cirocco v. McMahon*, 768 F. App'x 854, 855 (10th Cir. 2019) ("[W]e affirm the district court's decision that [plaintiff] failed to exhaust her administrative remedies but remand with instructions. . . to dismiss the case without prejudice based on the affirmative defense of failure to exhaust administrative remedies, rather than for lack of subject-matter jurisdiction.").