**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**February 6, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

AMANDA MCDADE,

     Plaintiff - Appellant,

v.

WESTON COUNTY HOSPITAL
DISTRICT, d/b/a Weston County Health
Services,

     Defendant - Appellee.

No. 24-8031
(D.C. No. 1:23-CV-00232-SWS)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

Plaintiff-Appellant Amanda McDade seeks to resuscitate disability

discrimination claims flowing from an alleged scheme undertaken by her former

employer, Defendant-Appellee Weston County Hospital District ("WCHD"), to

retaliate against her for engaging in corporate whistleblowing activity. The district

court concluded that Ms. McDade had not alleged a disability as required to prevail

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with Federal
Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

under a disability discrimination claim, and thus dismissed her Complaint. Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND

### A.    *Factual History*[1]

Ms. McDade accepted an offer of employment from WCHD in June 2019, and

"shortly thereafter became the Human Resources Generalist." App. at 6. In that role,

Ms. McDade had ready access to "employee records, payroll, [] time keeping[,] and

operation documentation." *Id.* at 7. From these records, she discerned "money

mismanagement, illegality, and ethics" problems, which—at some unspecified

time—she raised "through the proper chain of command" all the way up to WCHD's

"Board of Trustees President at the time, Connie James." *Id.* She further reported

"allegations of discriminatory policies" and "labor law violations" at WCHD. *Id.*

Instead of addressing these concerns, WCHD asked Ms. McDade to "modify records

in the documentation to cover up what had occurred." *Id.* She refused to comply with

that request.

On October 14, 2021, Ms. McDade was contacted by a nurse in the office of

her primary care physician, Dr. Sara Thurgood, who was also employed by WCHD.

The nurse indicated she was calling on behalf of Dr. Thurgood to request that

Ms. McDade come in for an appointment "to discuss medication and possible

---

[1] Because we are reviewing the dismissal of a complaint pursuant to Federal
Rule of Civil Procedure 12(b)(6), these facts are drawn from Ms. McDade's well-
pleaded factual allegations and construed in the light most favorable to her.
*McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 997 (10th Cir. 2002).

concerns with it." *Id.* at 8. Ms. McDade rebuffed the request because "she had no need for an appointment, nor had she made or requested one." *Id.*

Later that same day, Dr. Thurgood visited Ms. McDade—"uninvited and unannounced"—in the latter's office. *Id.* Dr. Thurgood asked if she could close Ms. McDade's office door so the two could "have a confidential conversation." *Id.* at 9. Dr. Thurgood closed the door, and Ms. McDade began recording the conversation.[2] After mentioning "various confidential facts regarding [Ms. McDade's] previous treatments," Dr. Thurgood indicated that WCHD administrators were "so concerned for" Ms. McDade. *Id.* Ms. McDade responded, "No they're not. They're so concerned in saving their own (expletive) right now." *Id.* Dr. Thurgood replied that WCHD was "probably" concerned about "both, because they've got an employee they're concerned about with what you've taken to the board . . . but then they're also concerned with just some of the things that you've said and things that would suggest an almost manic." *Id.*

Ms. McDade stated that she was "not manic in any way shape or form," and Dr. Thurgood agreed: "You don't look manic to me right now . . . umm so it's hard you know when I'm hearing things from one side of things and then seeing another. You know I've got to be objective . . . it's just a tricky thing." *Id.* (alterations in original). Dr. Thurgood continued:

> My concern, my biggest concern here is that they are talking about potentially uhh I hope that it's ok I'm telling you this, they're talking about

---

[2] The above-reproduced quotes from Ms. McDade's Complaint are apparently transcribed (seemingly informally) from her recording.

potentially involuntary commitment . . . and I can't do that, it would be a conflict of interest. I'm like an employee here and you are in HR, I am your physician and will continue to be.

*Id.* at 10 (alteration in original). Dr. Thurgood indicated that she had very little experience with "Title 25 proceeding[s]," referring to Wyoming's temporary involuntary commitment statute, Wyo. Stat. Ann. § 25-10-109 (West 2023), and further explained that:

> I don't really know what to do, I mean my thought initially was to keep, to try to keep them from, I don't know what it's going to take to keep them from resorting to commitment you know what I mean. Like if I, initially I was like if I can get, like when they initially called me if I could get you to come into the office and we can work through this and maybe come with a umm . . . or have to adjust your medication just for good faith as a good faith measure toward them, like something like that.

*Id.* Finally, Dr. Thurgood told Ms. McDade that WCHD was "wanting [her] to make [the temporary involuntary commitment] assessment and I can't make that assessment, it's a conflict of interest." *Id.*

After "expressing to Dr. Thurgood her fear, terror and shock that this was occurring," Ms. McDade departed the hospital and resigned via email that same day. *Id.* at 10-11.

### B.    *Procedural History*

In April 2022, roughly six months after her resignation, Ms. McDade timely filed a Charge of Discrimination (the "Charge") with the Equal Employment Opportunity Commission (EEOC) and the Wyoming Fair Employment Practices office. In September 2023, Ms. McDade received a Notice of Right to Sue from the

4

EEOC, and she subsequently initiated this action less than ninety days later, on December 7, 2023.

Alongside a number of claims whose dismissal Ms. McDade does not appeal,[3] her Complaint asserted three disability discrimination claims under the Americans with Disabilities Act (ADA), alleging that WCHD "constructively terminated [Ms. McDade's] employment because of her disability or because of the need to provide her with a reasonable accommodation, in violation of 42 U.S.C. § 12112(b)(5)([B]) after an extensive bought [sic] of retaliation and hostile work environment." *Id.* at 15.

WCHD moved to dismiss the Complaint, and in April 2024, the district court granted WCHD's motion and dismissed the Complaint in full. The court concluded that Ms. McDade's failure to plead that she was disabled within the meaning of the ADA meant that all of her disability discrimination "claims necessarily fail." *Id.* at 91.[4] This timely appeal followed.

---

[3] Specifically, Ms. McDade asserted two counts for whistleblower retaliation, one arising under a Wyoming statute and the other under a contract theory premised on WCHD's whistleblower policy; a count for conspiracy to interfere with civil rights under 42 U.S.C. § 1985(3); and a count for ordinary negligence under Wyoming law.

[4] The district court identified "further deficiencies" in these claims, including that the Complaint made clear that Ms. McDade believed the alleged harassment was undertaken not to discriminate on the basis of disability, but rather to "retaliate against McDade for blowing the whistle on money mismanagement, labor law violations, and discriminatory policies at the hospital." App. at 92–93. Because we affirm the district court's conclusion on the disability prong, we need not review its other grounds for dismissal.

Between the filing of her opening and reply briefs on appeal, Ms. McDade terminated her lawyer's representation and did not retain new counsel. Ms. McDade's pro se reply brief[5] generally neglects to address the district court's resolution of her ADA claims, and instead consists largely of her grievances with her former lawyer and assertions that the lawyer's missteps caused the dismissal of her primary whistleblower retaliation claims that Ms. McDade has not appealed. Alongside that brief, Ms. McDade appended a number of documents not included in her existing appendix, and because these materials were not before the district court, WCHD moved to strike them along with portions of her reply brief which relied on the documents.

## II.    ANALYSIS

### A.    *Ms. McDade's ADA Claims*

"This court reviews *de novo* the district court's grant of a motion to dismiss pursuant to Rule 12(b)(6), applying the same legal standard applicable in the district court." *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). We accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Id.* If the complaint includes "enough facts to state a claim to relief that is plausible on its face," then dismissal is not warranted. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that

---

[5] While we must liberally construe Ms. McDade's pro se filings, we may not act as her advocate in this appeal. *See James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Title I of the ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

Under any disability discrimination claim, a plaintiff must plead and prove that she is disabled within the meaning of the ADA. *See Lanman v. Johnson Cnty.*, 393 F.3d 1151, 1156 (10th Cir. 2004) ("[A]s a threshold matter, any plaintiff asserting a claim under the ADA must establish he or she is a 'qualified individual with a disability.'" (quoting superseded version of 42 U.S.C. § 12112(a))), *overruled on other grounds by statute as stated in EEOC v. BNSF Ry. Co.*, 902 F.3d 916, 924 (9th Cir. 2018); *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1189 (10th Cir. 2003) ("No matter what type of discrimination is alleged, however, a plaintiff must establish first that he was 'a qualified individual with a disability.'"); *Steele v. Thiokol Corp.*, 241 F.3d 1248, 1253 (10th Cir. 2001).

The ADA defines "disability" as follows:

(A)    a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B)    a record of such an impairment; or

(C)    being regarded as having such an impairment[.]

7

42 U.S.C. § 12102(1).

The district court reasoned Ms. McDade had not pleaded the existence of an actual disability under subsection (A) of § 12102(1) given that her Complaint did "not identify what [her] disability is or how it affects her life." App. at 90. And the court rejected Ms. McDade's argument that she could pursue her ADA claims under the theory that she was "regarded as" disabled because her "failure to allege anything in her EEOC Charge of Discrimination concerning her 'regarded as' disability" meant that such theory had not been administratively exhausted. *Id.* at 91.

On appeal, Ms. McDade wisely abandons any contention that she adequately pleaded the existence of an actual disability, instead arguing that the district court erred by concluding her EEOC Charge did not exhaust disability discrimination claims based on a "regarded as" theory of disability. Accepting her concession, and because we are satisfied her Complaint did not plead an actual disability, we turn to the question of whether Ms. McDade has exhausted her "regarded as" disabled theory.

"In order to bring a claim under the ADA, [a plaintiff] must have exhausted her administrative remedies as to that claim before filing suit." *Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 988 (10th Cir. 2021). To satisfy exhaustion, an ADA plaintiff must have timely filed an EEOC charge "for which [she] has received a right-to-sue letter." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181 (10th Cir. 2018) (en banc) (quotation marks omitted).

8

The ADA's "exhaustion rule" serves twin purposes: (1) "to give notice of the alleged violation to the charged party," and (2) "to give the EEOC an opportunity to conciliate the claim." *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1170 (10th Cir. 2020) (quotation marks omitted). "To advance these purposes . . . [a] plaintiff's claim in court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Id.* (alterations in original and internal quotation marks omitted). "While we liberally construe the plaintiff's allegations in the EEOC charge, the <u>charge</u> must contain facts concerning the discriminatory and retaliatory actions underlying each claim." *Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1166 (10th Cir. 2018) (internal quotation marks omitted).

Ms. McDade's EEOC Charge contained the following allegations related to the disability element of her discrimination claims:

1. I belong to the protected groups, Christian and an individual protected under ADA.

2. My disability substantially limits a major life activity.

3. I otherwise was qualified for my position and performing the work at a satisfactory level.

4. The employer failed to make a reasonable accommodation where an accommodation would not place an undue hardship on the employer.

App. at 76.

Ms. McDade argues there was no need to specifically refer to the "regarded as" disabled theory in her EEOC Charge because the "definitions of disability are

9

self-fulfilling and need not be further cited within the EEOC's charging document."

Appellant's Br. at 8. We understand Ms. McDade to be arguing that an EEOC charge

asserting generally that the complainant is "disabled" suffices to exhaust ADA

discrimination claims premised on any one of the ADA's three definitions of

disability. We cannot agree.

The "ultimate question" regarding EEOC exhaustion is whether "the conduct

alleged [in the lawsuit] would fall within the scope of an EEOC investigation which

would reasonably grow out of the charges actually made [in the EEOC charge]."

*Smith*, 904 F.3d at 1164–65 (internal quotation marks omitted and alterations in

original). Under this analysis, we have held that a plaintiff may not assert a claim in

civil litigation where the critical facts underlying such claim were not contained

within the EEOC charge. *See id.* at 1166 (explaining that "[n]o matter how liberally

we may construe" the EEOC charge, it did not include a retaliation theory premised

on alleged protected activity not mentioned in the charge); *see also Sanderson*, 976

F.3d at 1171 (holding that where EEOC charge asserted "a theory of retaliation based

on events that occurred <u>after</u> [plaintiff's] demotion," the plaintiff's assertion in

litigation of a "distinct theor[y] of retaliation" based on protected activity that

occurred "<u>prior</u> to her demotion" was not exhausted).

While Ms. McDade's Charge begins by broadly claiming Ms. McDade is "an

individual protected under [the] ADA," it proceeds to clearly state that she has a

"disability [that] substantially limits a major life activity." App. at 76. The Charge

further alleges that WCHD "failed to make a reasonable accommodation where an

10

accommodation would not place an undue hardship on the employer." *Id.* But as Ms. McDade herself notes, under the ADA, "[n]o reasonable accommodation is owed to those claiming protection" under the "regarded as" definition of disability. Appellant's Br. at 10; *see* 42 U.S.C. § 12201(h). So even if the Charge had not unambiguously alleged the existence of an actual disability, its further assertion that that Ms. McDade required, but was not granted, a "reasonable accommodation" to her disability necessarily focused the EEOC investigation not on "disability" as broadly defined by the ADA, but on the existence of an actual disability—one that "substantially limits a major life activity" and for which Ms. McDade claimed to be owed "a reasonable accommodation." App. at 76. In short, we cannot read the Charge to contain the theory that Ms. McDade was "regarded as" disabled. As such, "the conduct alleged" in Ms. McDade's lawsuit cannot be said to "fall within the scope" of the EEOC investigation which would reasonably grow out of the allegations in her Charge. *Smith*, 904 F.3d at 1164 (quotation marks omitted).

We do not mean to suggest that to pursue an ADA claim or theory in civil litigation, a plaintiff must expressly invoke a particular legal incantation in the EEOC charge. Indeed, in compliance with our obligation to liberally construe EEOC charges, we have found theories exhausted where a charge's factual substance adequately raised certain theories notwithstanding the plaintiff's omission of any express allusions to the same. *See, e.g.*, *Anderson v. Clovis Mun. Schs.*, 265 F. App'x 699, 706 (10th Cir. 2008) (unpublished) (holding that although the plaintiff "did not specifically note 'hostile work environment' and 'constructive discharge' charges on

the form," those "legal theories were, in factual substance, sufficiently alleged in the EEOC filing").[6] But the exhaustion defect in Ms. McDade's EEOC Charge is not the omission of a particular turn of phrase or statutory citation. Rather, the Charge unambiguously alleged the existence of an *actual* disability, and it is otherwise devoid of any facts from which WCHD or the EEOC could surmise that Ms. McDade's claims rested—either principally or in the alternative—on a theory that she was "regarded as" disabled by WCHD. The district court correctly concluded that this theory was barred for failure to exhaust administrative remedies.

### B.    *WCHD's Motion to Strike*

Finally, we turn to WCHD's motion to strike documents attached to Ms. McDade's pro se reply brief along with references thereto in the brief. WCHD argues that its requested relief is warranted because (1) those materials were never before the district court, and (2) the Rule 12(b)(6) analysis—focused only on the Complaint and the EEOC Charge referenced therein—necessarily requires that we do not consider those materials.

While Ms. McDade has not formally moved to supplement the appellate appendix, our precedent addressing the propriety of new documents on appeal generally arises in that posture. And in that context, we have repeatedly denied motions to supplement where the materials advanced were not before the district

---

[6] We cite unpublished cases for their persuasive value only and do not treat them as binding authority. *See United States v. Ellis*, 23 F.4th 1228, 1238 n.6 (10th Cir. 2022).

court. *See Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 862–63 (10th Cir. 2015) (denying motion to supplement "when the materials sought to be added to the record were never before the district court"); *Estate of B.I.C. v. Gillen*, 710 F.3d 1168, 1176 (10th Cir. 2013) (denying "motion to file a supplemental appendix as the material was not before the district court").

Even if Ms. McDade could overcome her failure to present these materials to the district court, none could bear on our inquiry of whether the Complaint and the EEOC Charge adequately state ADA discrimination claims. For example, Ms. McDade appends a number of email and text exchanges between her and her former counsel, none of which relate to her ADA claims and as a matter of law could not be considered when assessing the sufficiency of the Complaint. *See, e.g.*, Appellant's Reply Br. at PDF Pg. 52–59 (excerpting text exchange between Ms. McDade and her lawyer concerning contemporaneous appellate mediation proceedings); *see Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024) (explaining that courts resolving a motion to dismiss may consider only the complaint and any documents "that a plaintiff (1) attaches to her complaint; (2) incorporates by reference in her complaint; or (3) refers to her in her complaint and that are central to her complaint and indisputably authentic").

Because these new materials were not before the district court, and further because they are not within the ambit of documents properly considered in resolving a motion to dismiss, we must strike those materials along with references thereto in Ms. McDade's reply brief.

## III.     CONCLUSION

For the foregoing reasons, we AFFIRM the dismissal of Ms. McDade's

Complaint, and we further GRANT WCHD's motion to strike.

Entered for the Court

Carolyn B. McHugh
Circuit Judge